**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

BELTON C. HAIG SR.,

Plaintiff,

v.

NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK); VRC INVESTIGATIONS (formerly PRIME SOURCE INVESTIGATIONS); EDWARD BELENGER, individually and as employee of VRC Investigations; LEROY KELLY II, individually and as employee of VRC Investigations; JOHN BONVENTRE, individually and as attorney for Landman Corsi Ballaine & Ford P.C.

Defendants.

Civil Action No.: 2:25-cv-15438 – CCC-AME

**RETURN DATE: November 3, 2025**

**Oral Argument Requested**

---

**BRIEF ON BEHALF OF DEFENDANTS NATIONAL RAILROAD PASSENGER CORPORATION AND JOHN BONVENTRE IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT IN ITS ENTIRETY WITH PREJUDICE**

---

Of Counsel and On the Brief:

Carla D. Macaluso, Esq.
Kea S. Noyan, Esq.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .......... 1

RELEVANT PROCEDURAL HISTORY .......... 2

FACTUAL STATEMENTS IDENTIFIED IN THE COMPLAINT .......... 3

LEGAL ARGUMENT .......... 4

POINT I .......... 4

DISMISSAL IS APPROPRIATE WHERE, AS HERE, PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED. .......... 4

POINT II .......... 5

THE LITIGATION PRIVILEGE BARS ALL CLAIMS BASED ON LITIGATION-RELATED CONDUCT. .......... 5

POINT III .......... 7

PLAINTIFF'S CEPA CLAIM (COUNT ONE) FAILS AS A MATTER OF LAW. .......... 7

A. Plaintiff's CEPA Claim Is Time Barred. .......... 8

B. Plaintiff's CEPA Claim Fails As A Matter Of Law. .......... 8

C. Plaintiff's CEPA Claim Against Mr. Bonventre Fails. .......... 12

POINT IV .......... 12

PLAINTIFF'S NEW JERSEY CIVIL RIGHT ACT CLAIM (COUNT II) FAIL AS A MATTER OF LAW .......... 15

POINT V .......... 15

PLAINTIFF'S INVASION OF PRIVACY AND INTRUSION UPON SECLUSION CLAIM (COUNT III) FAIL AS A MATTER OF LAW .......... 15

POINT VI .......... 17

PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIMS (COUNT IV) FAIL AS A MATTER OF LAW .......... 17

A. Plaintiff's IIED And NIED Claims Are Preempted By The LAD. .......... 17

B. Plaintiff Fails To Plead The Elements Of IIED. .................................................. 18

C. Plaintiff's NIED Claim Fails As A Matter Of Law. ............................................ 19

POINT VII ............................................................................................................... 20

PLAINTIFF'S AIDING AND ABETTING AND CIVIL CONSPIRACY CLAIMS (COUNT V) FAIL AS A MATTER OF LAW ............................................................................... 20

A. Plaintiff's Aiding And Abetting Claim Fails As A Matter of Law. ............................................................................................... 20

B. Plaintiff's Civil Conspiracy Claim Fails As A Matter Of Law. ............................................................................................... 22

POINT VIII ............................................................................................................. 23

PLAINTIFF'S FAILURE TO ACCOMMODATE CLAIMS UNDER THE LAD AND ADA (COUNT VI) FAIL AS A MATTER OF LAW ........................................................... 23

A. Plaintiff's ADA Claim Is Subject To Dismissal. ................................................. 23

B. Plaintiff's LAD Claim Is Subject To Dismissal. ................................................. 24

C. Plaintiff's LAD Claim Against Mr. Bonventre Fails. .......................................... 25

CONCLUSION ......................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

A. & M. Wholesale Hardware Co., Inc. v. Circor Instrumentation Tech., Inc.,
2014 U.S. Dist. LEXIS 23032 (D.N.J. Feb. 24, 2014) ....23

Abbamont v. Piscataway Bd. of Educ.,
138 N.J. 405 (1994) ....10

Albright v. Oliver,
510 U.S. 266 (1994)....4

Anjelino v. New York Times Co.,
200 F.3d 73 (3d Cir. 1999)....24

Armstrong v. Burdette Tomlin Mem'l Hosp.,
438 F.3d 240,(3d Cir. 2006)....24

Ashcroft v. Iqbal,
556 U.S. 662 (2009)....4, 5

Avataa USA, LLC. v. Yaminsky,
2025 U.S. Dist. LEXIS 53558 (D.N.J. Mar. 24, 2025)....21

Baglini v. Lauletta,
338 N.J. Super. 282 (App. Div. 2001) ....6

Banco Popular N. Am. v. Gandi,
184 N.J. 161 (2005) ....20, 21, 23

Beck v. Tribert,
312 N.J. Super. 335 (App. Div. 1998) ....8

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007)....4, 5

Bisbee v. John C. Conover Agency, Inc.,
186 N.J. Super. 335 (App. Div. 1982) ....15

Blackburn v. United Parcel Service, Inc.,
3 F. Supp. 2d 504 (D.N.J. 1998)....10

Borawski v. Henderson,
265 F. Supp. 2d 475 (D.N.J. 2003) ....11

Bowen v. Parking Auth. of Camden,
2003 U.S. Dist. LEXIS 16305 (D.N.J. Sep. 18, 2003) ....................5

Boyle v. Quest Diagnostics, Inc.,
2008 U.S. Dist. LEXIS 42470 (D.N.J. May 29, 2008) ....................10

Buck v. Hampton Twp. Sch. Dist.,
452 F.3d 256 (3d Cir. 2006)....................24

Buckley v. Trenton Sav. Fund. Society,
111 N.J. 355 (1988) ....................18

Burgess v. Bennett,
2021 U.S. Dist. LEXIS 52042 (D.N.J. Mar. 19, 2021)....................6

Burgh v. Borough Council of Montrose,
251 F.3d 465 (3d Cir. 2001)....................24

Catalane v. Gillian Instrument Corp.,
271 N.J. Super. 476 (1994) ....................18

Celestine v. Foley,
2010 U.S. Dist. LEXIS 132511 (D.N.J. Dec. 14, 2010) ....................13

Clayton v. City of Atl. City,
722 F. Supp. 2d 581 (D.N.J. 2010) ....................26

CNA Ins. Co. v. Waters,
197 N.J. Super. 247 (App. Div. 1984) ....................17

Conte v. Promethean Inc.,
2023 U.S. Dist. LEXIS 128184 (D.N.J. Jul. 14, 2023)....................7

Cox v. Keystone Carbon Co.,
861 F.2d 390 (3d Cir.1988)....................19

D'Ambly v. Exoo,
2021 U.S. Dist. LEXIS 210315 (D.N.J. Nov. 1, 2021)....................15

Decker v. Princeton Packet,
116 N.J. 418 (1989) ....................19

Devlin v. Greiner,
147 N.J.Super. 446 (Law Div.1977) ....................5

Doe v. Southeastern Pennsylvania Transportation Authority,
72 F.3d 1133 (3d Cir. 1995)....................17

Dzwonar v. McDevitt,
177 N.J. 451 (2003) ....................9, 11

Espinosa v. County of Union,
2005 U.S. Dist. LEXIS 36563 (D.N.J. Aug. 30, 2005)....................21

Figueiras v. Newark Pub. Schs.,
426 N.J. Super. 449 (App. Div. 2012) ....................12, 13

Figueroa v. Collision,
2022 U.S. Dis. LEXIS 188966 (D.N.J. Oct. 17, 2022)....................11

Finley v. Dun & Bradstreet Corp.,
471 F. Supp. 2d 485 (D.N.J. 2007) ....................4

Flythe v. Ralph Lauren, Inc.,
2016 U.S. Dist. LEXIS 159314 (D.N.J. Nov. 17, 2016)....................13

Garcia v. N. Brunswick Pub. Sch.,
2020 U.S. Dist. LEXIS 159130 (D.N.J. Sep. 1, 2020) ....................14

Giles v. Phelan, Hallinan & Schmieg, L.L.P.,
901 F. Supp. 2d 509 (D.N.J. 2012) ....................5

Gonzalez v. Sec'y of the Dep't of Homeland Sec.,
678 F.3d 254 (3d Cir.2012)....................11

Graddy v. Deutsche Bank Trust Co.,
2012 U.S. Dist. LEXIS 29154 (D.N.J. 2016) ....................19

Griffin v. Tops Appliance City, Inc.,
337 N.J. Super. 15 (App. Div. 2001) ....................18

Hancock v. Borough of Oaklyn,
347 N.J. Super. 350 (App. Div. 2002) ....................11

Hawkins v. Harris,
141 N.J. 207 (1995) ....................5, 6

Heffernan v. Huner,
189 F.3d 405 (3d Cir. 1999)....................22

Hennessey v. Coastal Eagle Point Oil Co.,
129 N.J. 81 (1992) ....................15

Hillburn v. Bayonne Parking Authority,
2009 U.S. Dist. LEXIS 6762 (D.N.J. 2009) ....................15

Hitesman v. Bridgeway, Inc.,
218 N.J. 8 (2014) ....................................................................................................9

Ingraham v. Ortho-McNeil Pharm,
422 N.J. Super. 12 (App. Div. 2011) ....................................................................18

Karipidis v. Ace Gaming LLC,
2010 U.S. Dist. LEXIS 56617 (D.N.J. June 9, 2010) ............................................25

Kehoe v. Hard Rock Hotel & Casino,
2025 U.S. Dist. LEXIS 115110 (D.N.J. June 12, 2025) ........................................21

Kernan v. One Wash. Park Urban Renewal Assocs.,
154 N.J. 437 (1998) ..............................................................................................19

Koslow v. Commonwealth of Pa.,
302 F.3d 161 (3d Cir. 2002).................................................................................25

Lapolla v. Cnty. Of Union,
449 N.J. Super. 288 (App. Div. 2017) ............................................................14, 21

Loigman v. Twp. Comm. of Middletown,
185 N.J. 566 (2006) ................................................................................................6

Mala v. Crown Bay Marina, Inc.,
704 F.3d 239 (3d Cir. 2013)...................................................................................4

Malleus v. George,
641 F.3d 560 (3d Cir. 2011).................................................................................13

Marjac, L.L.C. v. Trenk,
U.S. Dist. LEXIS 59830 (D.N.J. July 14, 2009)...................................................13

Mascio v. Mullica Twp. Sch. Dist.,
2016 U.S. Dist. LEXIS 123864 (D.N.J. 2016) ......................................................20

Matthews v. N.J. Inst. of Tech.,
717 F. Supp. 2d 447 (D.N.J. 2010) ...............................................................13, 15

Mayorga v. Sonoco Prods. Co.,
2013 U.S. Dist. LEXIS 59894 (D.N.J. Apr. 16, 2013) ......................................9, 10

McCormac v. Qwest Commc'ns Intern., Inc.,
387 N.J. Super. 469 (App. Div. 2006) ..................................................................20

McCoy v. Port Liberte Condo. Ass'n # 1, Inc.,
2003 U.S. Dist. LEXIS 26462 (D.N.J. Sept. 2003) ...............................................26

Mehlman v. Mobil Oil Corp.,
153 N.J. 163 (1998) ....9

Metzler v. Am. Transp. Group, L.L.C.,
2008 U.S. Dist. LEXIS 10562 (D.N.J. 2008) ....18

Mills v. Golden Nugget Atl. City LLC,
2021 U.S. Dist. LEXIS 156166 (D.N.J. 2021) ....16

Montells v. Haynes,
133 N.J. 282 (1993) ....25

Morse v. Lower Merion Sch. Dist.,
132 F.3d 902 (3d Cir. 1997)....4

In re Nickelodeon Consumer Privacy Litig.,
827 F.3d 262 (3d Cir. 2016)....15

Palladino v. VNA of S.N.J., Inc.,
68 F. Supp. 2d 455 (D.N.J. 1999) ....12

Patterson v. Glory Foods, Inc.,
2012 U.S. Dist. LEXIS 140337 (D.N.J. Sept. 28, 2012) ....10

Patti v. Ibarrondo,
2023 U.S. Dist. LEXIS 133824 (D.N.J. Aug. 1, 2023)....11

Paul v. Davis,
424 U.S. 693 (1976)....14

Peterson v. Ballard,
292 N.J. Super. 575 (App. Div. 1996) ....6

Photis v. Sears Holding Corp.,
2013 U.S. Dist. LEXIS 104152 (D.N.J. July 25, 2013)....26

Portee v. Jaffee,
84 N.J. 88 (1980) ....19

Quarles v. Lowe's Home Centers, Inc.,
2006 U.S. Dist. LEXIS 97336 (D.N.J. 2006) ....18

Rich v. State,
294 F. Supp. 3d 266 (D.N.J. 2018) ....25

Rickenbach v. Wells Fargo Bank, N.A.,
635 F. Supp. 2d 389 (D.N.J. 2009) ....5

Schechter v. N.J. Dept. of Law & Public Safety,
327 N.J. Super. 428 (App. Div. 2000) ....................9

Shih v. Maselli, Mills & Fornal, P.C.,
2025 LEXIS 128347 (D.N.J. Mar. 31, 2025)....................6

Soliman v. Kushner Cos., Inc.,
433 N.J. Super. 153 (App. Div. 2013) ....................16

Stengart v. Loving Care Agency, Inc.,
201 N.J. 300 (2010) ....................15, 16

Sun Pharm. Indus., Inc. v. Core Tech Solutions, Inc.,
2013 N.J. Super. Unpub. LEXIS 1126 (App. Div. May 13, 2013)....................22

Szemple v. Corr. Med Servs.,
493 F. App'x 238 (3d Cir. 2012)....................12

Tarr v. Ciasulli,
181 N.J. 70 (2004) ....................20, 21, 26

Toys 'R' Us, Inc. v. Step Two, S.A.,
318 F.3d 446 (3d Cir. 2003)....................3

Trafton v. City of Woodbury,
799 F. Supp. 2d 417 (D.N.J. 2011) ....................12

Tumpson v. Farina,
218 N.J. 450 (2014) ....................14

Victor v. State,
203 N.J. 383 (2010) ....................26

Vidal v. Galaxy 2439 Enters., LLC,
2023 U.S. Dist. LEXIS 217264 (D.N.J. Dec. 6, 2023)....................8

Villanueva v. Innovative Investigations, Inc.,
420 N.J. Super. 353 (App. Div. 2011) ....................16

Vogt v. Wetzel,
2021 U.S. App. LEXIS 23540 (3d Cir. 2021) ....................4

Webb v. City of Phila.,
562 F.3d 256 (3d Cir. 2009)....................24

West v. Atkins,
487 U.S. 42 (2008)....................13

White v. White,
344 N.J. Super. 211 (App. Div. 2001) ....................16

Young v. Schering Corp.,
141 N.J. 16 (1995) ....................14, 15

**Statutes**

42 U.S.C. § 1983....................12

42 U.S.C. § 12102(1) ....................24

42 U.S.C. § 12111(5)(A)....................25

42 U.S.C. § 12117(a) ....................24

45 U.S.C. § 51 et seq....................2

N.J.S.A. 10:5-12(a) ....................26

N.J.S.A. 10:6-2(c) ....................12

N.J.S.A. 34:19-3....................10

N.J.S.A. 34:19-5....................8

N.J.S.A. 34:19-8....................14

N.J.S.A. § 2A:14-3....................5

N.J. Stat. Ann. § 34:19-3(a)(1), (c)(1) ....................10

**Other Authorities**

Fed. R. Civ. P. 8(a) ....................25

Fed R Civ. P. 12(b)(6)....................1, 4, 5, 27

## PRELIMINARY STATEMENT

Defendants, National Railroad Passenger Corporation a/k/a Amtrak ("Amtrak") and John Bonventre ("Mr. Bonventre") (collectively "Defendants"), respectfully submit this memorandum in support of their motion to dismiss the Complaint filed by Plaintiff Belton C. Haig ("Plaintiff") in its entirety.[1] Plaintiff is proceeding *pro se* in this matter.

This case is simply an improper attempt by Plaintiff to relitigate a prior Federal Employers' Liability Act ("FELA") personal injury action against Amtrak (the "FELA Action"). That case was fully resolved nearly two years ago after a jury trial and a final judgment in Plaintiff's favor which Amtrak satisfied. Plaintiff, still dissatisfied, now asserts baseless statutory and common-law claims against both Amtrak and its former litigation counsel, Mr. Bonventre.

The claims set forth in Plaintiff's Complaint are factually and legally insufficient and are subject to dismissal pursuant to Fed R Civ. P. 12(b)(6) as a matter of law:

- Count I (alleged retaliation under the Conscientious Employee Protection Act ("CEPA")): is time-barred and legally insufficient as it fails to allege any protected whistleblowing activity, violation of law, or adverse employment action.
- Count II (alleged violation of New Jersey Civil Rights Act ("NJCRA")): is substantively deficient as Plaintiff has not set forth that Amtrak is a state actor and also fails to specifically identify any deprivation of a protected right, or any recognized civil rights violation. This claim is also barred by CEPA's waiver provision.
- Count III (alleged Invasion of Privacy/Intrusion upon Seclusion): is legally insufficient as it does not allege any intentional, highly offensive intrusion into a private sphere.
- Count IV (alleged intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED")): fails to plausibly plead the required elements and is preempted insofar as the claims are premised on the same alleged employment-related conduct as the New Jersey Law Against Discrimination ("LAD") claim.
- Count V (alleged Aiding and Abetting and Civil Conspiracy) fails for lack of any viable underlying tort and the required elements of secondary liability.

[1] Plaintiff also names VRC Investigations, Edward Belenger, and Leroy Kelly II (collectively "the VRC Defendants") in this matter. The VRC Defendants are represented by separate counsel.

- Count VI (alleged failure to accommodate under the LAD and the Americans with Disabilities Act ("ADA")): Both the LAD and ADA claims are substantively deficient as Plaintiff did not properly plead a qualifying disability and failed to identify any accommodations he allegedly requested. Moreover, the LAD claim is untimely, and the ADA claim must be dismissed as Plaintiff failed to allege exhaustion of administrative remedies.

Plaintiff's *pro se* status does not excuse his failure to allege facts sufficient to support a plausible claim for relief. The Complaint consists of nothing more than legal conclusions, unsupported accusations, speculation, and personal grievances that do not state any plausible claims against Defendants. For these reasons, and as detailed below, the Complaint should be dismissed in its entirety, with prejudice, as a matter of law.

## RELEVANT PROCEDURAL HISTORY

The FELA Action arose from an October 23, 2016, motor vehicle accident. (See Certification of Carla D. Macaluso ("Macaluso Cert."), Exhibit 1, civil docket sheet for case 2:18-cv-12370-WJM-JSA).[2] On June 12, 2018, Plaintiff commenced the FELA Action which asserted a single claim under the FELA, 45 U.S.C. § 51 et seq. and alleged that Amtrak failed to provide a safe workplace and safe transportation when he was injured while riding as a passenger in an Amtrak van.[3] (Exhibit 1, ECF No. 1). Attorneys from Landman Corsi Ballaine & Ford, P.C., including Mr. Bonventre, represented Amtrak. (Id.).

The FELA Action was actively litigated for more than five years, and included extensive discovery, case management conferences, and pretrial proceedings. (Id.). Ultimately, the matter proceeded to a jury trial on October 30, 2023. (Exhibit 1, ECF No. 93). On November 6, 2023, the jury returned a verdict in Plaintiff's favor, awarding damages of approximately $62,932.00. (Exhibit 1, ECF No. 121). Judgment was entered on November 16, 2023. (Id.). Amtrak satisfied

[2] A true and correct copy of this action is attached to the Macaluso Cert. as Exhibit 1.
[3] The FELA Action was filed the United States District Court for the Southern District of New York but later transferred to the District of New Jersey. (Exhibit 1, ECF No. 11).

the judgment in full, and a satisfaction of judgment was entered on February 13, 2024. (Exhibit 1, ECF No. 122). On May 27, 2025, the court denied Plaintiff's *pro se* request for reconsideration, confirming that the case had been resolved. (Exhibit 1, ECF No. 124).

On August 6, 2024, Plaintiff filed the present action in the Superior Court of New Jersey. (Compl., Exhibit A to Notice of Removal, ECF No. 1-1 ("Compl.")). Defendants timely removed the action to this Court on September 10, 2025. (Notice of Removal, ECF No. 1).

## FACTUAL STATEMENTS IDENTIFIED IN THE COMPLAINT [4]

1. Plaintiff alleges he began working for Amtrak in January 2016, that Amtrak was aware of his alleged mental disability from military service, and that he was injured in an Amtrak vehicle accident in October 2016. (Compl., at ¶¶ 9–10).

2. Plaintiff sued Amtrak for those injuries, declined a settlement, and ultimately prevailed in the personal injury litigation. (Id., at ¶ 11). Plaintiff asserts that Defendants engaged in perjury, defamation, and other misconduct during those proceedings. (Id., at ¶ 11. 1).

3. Mr. Bonventre, an attorney with Landman Corsi Ballaine & Ford, P.C., represented Amtrak in the FELA Action. (Id., at ¶ 6; see also Exhibit 1, ECF No. 15).

4. Plaintiff alleges that from January 2022 to September 2023, Defendants harassed and surveilled him by following, stalking, secretly filming, and placing tracking devices on his vehicles. (Id., at ¶¶ 12–14). Plaintiff claims that on or about July 7, 2022, and October 30, through November 6, 2023, Mr. Bonventre gave false testimony that harmed Plaintiff's credibility. (Id., at ¶¶ 12–15).

[4] The following facts are taken directly from Plaintiff's Complaint and shall be considered true for purposes of this motion only. See Toys 'R' Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003). Defendants reserve the right to contest the truth of each and every allegation (factual or otherwise) contained in the Complaint should this motion be denied.

5. Plaintiff contends Amtrak denied his requests for reasonable accommodation and locked him out of the job portal. (Id., at ¶¶ 16–17).

6. Plaintiff alleges he reported issues to HR Investigations and Ethics Point, but no action was taken. (Id., at ¶ 18).

## LEGAL ARGUMENT

## POINT I

### DISMISSAL IS APPROPRIATE WHERE, AS HERE, PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Fed. R. Civ. P. 12(b)(6) authorizes dismissal of any pleading that fails to state a claim upon which relief can be granted. In deciding a Rule 12(b)(6) motion, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in the plaintiff's favor. Albright v. Oliver, 510 U.S. 266, 268 (1994). However, the Court is not required to accept legal conclusions, unwarranted inferences, or conclusory statements cast as factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997); Finley v. Dun & Bradstreet Corp., 471 F. Supp. 2d 485, 488 (D.N.J. 2007).

To survive dismissal, a complaint must set forth sufficient factual matters to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Threadbare recitals of the elements of a cause of action, supported only by conclusory statements, are insufficient. Iqbal, 556 U.S. at 678.

*Pro se* litigants must allege sufficient facts to support a claim and are required to follow the same procedural rules as all other litigants. Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013); Vogt v. Wetzel, 2021 U.S. App. LEXIS 23540, at *185 (3d Cir. 2021).[5]

[5] A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 2.

Here, Plaintiff's Complaint consists of conclusory statements, unsupported legal theories, and speculative assertions, none of which satisfy the pleading requirements of Fed. R. Civ. P. 12(b)(6), Ashcroft v. Iqbal, or Bell Atl. Corp. v. Twombly. Simply put, Plaintiff has not set forth any allegations that state any plausible cause of action as to Defendants. Accordingly, the Complaint must be dismissed in its entirety as to both Amtrak and Mr. Bonventre.[6]

**POINT II**

**THE LITIGATION PRIVILEGE BARS ALL CLAIMS BASED ON LITIGATION-RELATED CONDUCT.**

All claims against Mr. Bonventre, and claims based on conduct arising from the FELA Action against Amtrak, must be dismissed under the New Jersey litigation privilege which provides absolute immunity for statements and conduct by attorneys, parties, and their representatives or agents, made in the course of judicial proceedings. Giles v. Phelan, Hallinan & Schmieg, L.L.P., 901 F. Supp. 2d 509, 523 (D.N.J. 2012) (statements by attorneys made in the course of judicial proceedings are absolutely privileged and immune from liability); Rickenbach v. Wells Fargo Bank, N.A., 635 F. Supp. 2d 389, 401 (D.N.J. 2009) ("[T]he litigation privilege is well-established and broadly applicable."); Devlin v. Greiner, 147 N.J. Super. 446, 453 (Law Div.1977) (assuming absolute privilege would apply if investigator's statements were made during judicial proceedings); Bowen v. Parking Auth. of Camden, 2003 U.S. Dist. LEXIS 16305, at *125

[6] While Plaintiff's Complaint does not allege a separate cause of action for defamation; such a claim would be subject to dismissal as it is governed by a one-year statute of limitations. N.J.S.A. § 2A:14-3 ("Every action at law for libel or slander shall be commenced within [one] year next after the publication of the alleged libel or slander.") Further, it is barred by the New Jersey litigation privilege. Hawkins v. Harris, 141 N.J. 207, 213-14 (1995) (holding that defamatory statements made in the course of judicial proceedings are absolutely privileged and immune from liability.) Plaintiff's own allegations confirm that the alleged defamatory conduct arose from the FELA Action. Specifically, Plaintiff alleges that when he "ultimately prevailed in the prior personal injury litigation, the acts of perjury, defamation, and other misconduct committed by Defendants during *those proceedings* substantially undermined the fairness of the process and diminished the monetary award rendered by the jury" thereby tying the alleged misconduct directly to "those proceedings." (Compl, ¶ 11.1) (emphasis added).

(D.N.J. Sep. 18, 2003) ("New Jersey's litigation privilege protects lawyers [and] parties…who make statements during the course of judicial proceedings").[7]

The privilege applies to all communications made in judicial proceedings by litigants or other authorized participants, so long as they are made to achieve the objects of the litigation and bear some logical relation to the action. Hawkins v. Harris, 141 N.J. 207, 216 (1995) (the privilege applies to *all statements and communications* made "in connection with" a judicial proceeding) (emphasis added). It extends beyond trial to pre-litigation and discovery communications, and it protects statements even if made with malice. Baglini v. Lauletta, 338 N.J. Super. 282, 295 (App. Div. 2001). Application of the privilege is a question of law appropriately decided at the motion to dismiss stage. Burgess v. Bennett, 2021 U.S. Dist. LEXIS 52042, at *6 (D.N.J. Mar. 19, 2021); Peterson v. Ballard, 292 N.J. Super. 575, 589 (App. Div. 1996).[8]

All allegations against Mr. Bonventre arise from his conduct as Amtrak's counsel in the prior FELA Action. (Compl. ¶¶ 12–18). As noted above, the privilege forecloses civil liability for any communication or conduct by attorneys acting within the scope of representation, including advocacy, defense strategy, and pre-litigation communications. See Loigman v. Twp. Comm. of Middletown, 185 N.J. 566, 585 (2006) (stating "the litigation privilege protects attorneys not only from defamation actions, but also from a host of other tort-related claims," and also applies to § 1983 claims); Shih v. Maselli, Mills & Fornal, P.C., 2025 LEXIS 128347 (D.N.J. Mar. 31, 2025) (dismissing IIED claims against outside counsel as barred by the litigation privilege)[9]; Peterson, 292 N.J. Super. at 582 (dismissing a LAD claim as barred by the litigation privilege).

[7] A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 3.
[8] A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 4.
[9] A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 5.

Similarly, the litigation privilege covers parties as well. Conte v. Promethean Inc., 2023 U.S. Dist. LEXIS 128184, at *19 (D.N.J. Jul. 14, 2023) (applying litigation privilege in dismissing tortious interference claim arising from defendant-employer's litigation communications).[10] As such, a number of Plaintiff's claims are predicated on Amtrak's alleged conduct in the FELA Action: alleged perjury, defamatory statements, litigation surveillance, or investigatory activity in connection with trial strategy. (Compl. ¶¶ 11.1–15). Reliance on these alleged actions, which fall within the litigation privilege, precludes the following claims as to Amtrak: Count I CEPA[11], Count II, NJCRA, Count III invasion of privacy by intrusion upon seclusion, Count IV IIED and NIED, and Count V aiding and abetting and civil conspiracy. These claims are subject to dismissal as to Amtrak because they are premised on alleged activities related to Amtrak's defense of the FELA action.

Accordingly, all claims against Mr. Bonventre are barred by the litigation privilege. As to Amtrak, the privilege forecloses those claims premised on the FELA Action – including Plaintiff's CEPA, NJCRA, privacy, and related tort claims (Counts I – V) – which are likewise foreclosed as a matter of law.

## POINT III

## PLAINTIFF'S CEPA CLAIM (COUNT ONE) FAILS AS A MATTER OF LAW.

Plaintiff's CEPA claim is time-barred because the Complaint was filed outside CEPA's one-year limitations period. The claim also fails because Plaintiff does not allege that Defendants violated a law, rule, or regulation promulgated pursuant to law; that he engaged in any whistleblowing activity; that he suffered an adverse employment action; or that even if Plaintiff

[10] A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 6.

[11] Plaintiff's CEPA claim is precluded by the litigation privilege to the extent Plaintiff relies on his allegations that he was "retaliated against through surveillance, ,,, and public defamation."). (Compl. ¶ 20).

engaged in a whistleblowing activity, there is a causal connection between the alleged activity and the unidentified adverse employment action. Furthermore, there is no basis to hold Mr. Bonventre individually liable under CEPA.

**A. Plaintiff's CEPA Claim Is Time Barred.**

CEPA claims are subject to a one-year statute of limitations. N.J.S.A. 34:19-5 (setting a one-year statute of limitations); see also Vidal v. Galaxy 2439 Enters., LLC, 2023 U.S. Dist. LEXIS 217264, at *16 (D.N.J. Dec. 6, 2023) (dismissing CEPA claim as time-barred under the one-year limitations period).[12] Accordingly, if a plaintiff alleges retaliatory actions outside the one-year limitation period, those claims are barred. See Jones v. Jersey City Med Ctr., 20 F. Supp. 2d 770, 773 (D.N.J. 1998) (dismissing a CEPA claim brought after the one-year statute of limitations).

Plaintiff alleges retaliation from January 2022 through September 2023, (Compl. ¶¶ 12–14), including purported defamation on July 7, 2022, and during court proceedings from October 30 through November 6, 2023. (Compl. ¶ 15). However, Plaintiff filed this action on August 6, 2025—over twenty-one months after the last alleged retaliatory acts set forth in the Complaint on November 6, 2023. See Beck v. Tribert, 312 N.J. Super. 335, 346 (App. Div. 1998) (finding that a former employee's claim for retaliatory discharge which was brought twenty-two months after he was terminated was time-barred by CEPA's one-year statute of limitations). Accordingly, Count I is subject to dismissal as it is time-barred.[13]

**B. Plaintiff's CEPA Claim Fails As A Matter Of Law.**

Plaintiff's CEPA claim also fails on the merits. Plaintiff does not allege any protected

[12] A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 7.

[13] Plaintiff's vague reference to undated "requests for reasonable accommodations from Amtrak were consistently denied" as retaliation cannot salvage his CEPA claim. (Compl. ¶ 16).

whistleblowing activity or adverse employment action, and his allegations about Amtrak's defense of prior litigation, alleged perjury, or generalized grievances do not constitute "retaliatory actions" under CEPA (Compl. ¶¶ 9–18). To state a CEPA claim, a plaintiff must allege: (1) a reasonable belief of unlawful conduct; (2) a whistleblowing activity as defined by CEPA; (3) an adverse employment action; and (4) a causal connection between the two. Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003). Plaintiff's Complaint fails to allege facts supporting any of these elements.

With respect to the first element, Plaintiff fails to identify any specific law, rule, or regulation that Amtrak allegedly violated. Hitesman v. Bridgeway, Inc., 218 N.J. 8 (2014) (noting that, under Dzwonar, where no law or policy is identified, judgment for defendant is proper); Mehlman v. Mobil Oil Corp., 153 N.J. 163, 187-88 (1998) (establishing the alleged conduct must be more than a private dispute); Schechter v. N.J. Dept. of Law & Public Safety, 327 N.J. Super. 428, 431 (App. Div. 2000) (rejecting CEPA claim based on a mere policy dispute). Courts consistently hold that when a plaintiff does not provide such a law or public policy, judgment should be entered for the defendant. Mayorga v. Sonoco Prods. Co., 2013 U.S. Dist. LEXIS 59894, at *5 (D.N.J. Apr. 16, 2013) (dismissing for failure to allege a violation of law).[14]

Here, Plaintiff's Complaint does not identify any specific statute, regulation, rule, or clear mandate of public policy that Amtrak allegedly violated as Plaintiff only asserts that he "disclosed unlawful conduct" and was subjected to surveillance, stalking, and tracking devices on his vehicles between January 2022 and September 2023. (Compl. ¶¶ 12–14, 29). Plaintiff's failure to specify what conduct was unlawful or identify a law, rule, or public policy that was allegedly violated by Amtrak's conduct mandates dismissal of his CEPA claim.

For the second element, CEPA protects only employees who actually disclose or object to

[14] A true and correct copy of this decision is attached to the Macaluso Cert as Exhibit 8.

their employer's corrupt, fraudulent, or unlawful activities in the public interest. Mayorga, 2013 U.S. Dist. LEXIS 59894, at *5 (citing Abbamont v. Piscataway Bd. of Educ., 138 N.J. 405, 417 (1994). Whistleblowing is essential to a CEPA claim—a plaintiff cannot claim retaliation for "blowing the whistle" if he did not actually do so. Blackburn v. United Parcel Service, Inc., 3 F. Supp. 2d 504, 517 (D.N.J. 1998). Whistleblowing occurs when an employee discloses or objects to an activity, policy, or practice of the employer that the employee reasonably believes is unlawful. Id.; N.J. Stat. Ann. § 34:19-3(a)(1), (c)(1). "Courts have declined to view a CEPA plaintiff's proffered complaint as a whistleblowing activity when it makes no references to violations of the law." Patterson v. Glory Foods, Inc., 2012 U.S. Dist. LEXIS 140337, at *8 (D.N.J. Sept. 28, 2012)[15] (citing Boyle v. Quest Diagnostics, Inc., 2008 U.S. Dist. LEXIS 42470, at *7 (D.N.J. May 29, 2008)).[16]

Here, Plaintiff's Complaint contains no factual allegations that he engaged in protected whistleblowing activity. There are no claims that he disclosed, objected to, or refused to participate in any conduct by Amtrak that he reasonably believed was unlawful, fraudulent, or contrary to public policy, as required by N.J.S.A. 34:19-3. Instead, Plaintiff merely asserts that he reported unspecified "acts" to "HR Investigations and Ethics Point" (Compl. ¶ 18), without identifying the conduct, dates, or recipients. This lack of specificity is fatal to his CEPA claim.

As to the third element, it is unclear what adverse employment action Plaintiff purportedly suffered. He does not allege that Amtrak took any adverse employment action against him. Instead, Plaintiff alleges surveillance, public defamation, perjury in litigation, and intrusion into his medical and personal affairs. (Compl. ¶¶ 13–15). Such allegations do not constitute an "adverse employment action" under CEPA as adverse employment actions are limited to tangible

[15] A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 9.
[16] A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 10.

changes in the terms and conditions of employment, such as termination, demotion, suspension, or denial of compensation or promotions. See Patti v. Ibarrondo, 2023 U.S. Dist. LEXIS 133824, at *12 (D.N.J. Aug. 1, 2023) (a plaintiff must allege an action that tangibly alters compensation, terms, conditions, or privileges of employment);[17] Hancock v. Borough of Oaklyn, 347 N.J. Super. 350, 360 (App. Div. 2002) ("'[r]etaliatory action' does not encompass action taken to [allegedly] *effectuate* the 'discharge, suspension or demotion'" but rather "speaks in terms of completed action.")(emphasis added); Borawski v. Henderson, 265 F. Supp. 2d 475, 487 (D.N.J. 2003) (Under the CEPA a retaliatory action "is confined to 'completed . . . personnel actions that have an effect on either compensation or job rank.'" (quoting Hancock, supra, 347 N.J. Super. at 360)).

Finally, because the Complaint does not include any factual allegations to support the first three (3) elements of a CEPA claim, Plaintiff also cannot establish the final element — the requisite causal nexus between whistleblowing activity and an adverse employment action. See Dzwonar, 177 N.J. at 462. Thus, the facts alleged by Plaintiff's self-serving allegations are insufficient to establish the causal nexus required for a prima facie CEPA case. See Gonzalez v. Sec'y of the Dep't of Homeland Sec., 678 F.3d 254, 263 (3d Cir.2012) ("[a]s a general proposition, 'conclusory, self-serving [statements] are insufficient to withstand a [dispositive] motion'"); Figueroa v. Collision, 2022 U.S. Dist. LEXIS 188966, at *7 (D.N.J. Oct. 17, 2022)("Even assuming Figueroa properly complained about the alleged illegal activity to warrant CEPA protection, this Court must dismiss his CEPA claim because he fails to adequately plead causation").[18] As such, Plaintiff's allegations are insufficient to set forth a plausible basis for relief under CEPA and are subject to dismissal.

---

[17] A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 11.
[18] A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 12.

### C. Plaintiff's CEPA Claim Against Mr. Bonventre Fails.

CEPA does not extend individual liability to Mr. Bonventre. In Palladino v. VNA of S.N.J., Inc., 68 F. Supp. 2d 455, 472 (D.N.J. 1999), the Court recognized that CEPA's broad definition of "employer" could encompass agents but concluded that liability is limited to those who exercise supervisory or decision-making authority over employment. Attorneys representing an employer in litigation do not fit within that category, and Plaintiff's Complaint confirms that Mr. Bonventre's role was confined to defending Amtrak in the FELA Action, not employment decisions. (Compl. ¶¶6, 15). Accordingly, the CEPA claim against Mr. Bonventre must be dismissed.

## POINT IV

## PLAINTIFF'S NEW JERSEY CIVIL RIGHT ACT CLAIM (COUNT II) FAILS AS A MATTER OF LAW.

Plaintiff's NJCRA claim fails to state a claim upon which relief can be granted. Additionally, this claim is also barred by CEPA's waiver provision.

The NJCRA was modeled after 42 U.S.C. § 1983. Figueiras v. Newark Pub. Schs., 426 N.J. Super. 449, 468 (App. Div. 2012) (citations omitted); Szemple v. Corr. Med Servs., 493 F. App'x 238, 241 (3d Cir. 2012) ("The NJCRA is interpreted as analogous to § 1983); Trafton v. City of Woodbury, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011) (collecting cases).

The NJCRA provides a private cause of action to a person who:

> has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by person acting under color of state law.

N.J.S.A. 10:6-2(c).

To state a claim, Plaintiff must identify a state actor who acted "'under color of law,' that has caused the alleged deprivation." Figueiras, 426 N.J. Super. at 468 (citations omitted); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (citing West v. Atkins, 487 U.S. 42, 48 (2008) Marjac, L.L.C. v. Trenk, U.S. Dist. LEXIS 59830, at *9 (D.N.J. July 14, 2009) ("Plaintiffs are required to come forward with evidence that their constitutional rights, under the federal or state constitutions, have been violated as a result of some state action."), rev'd on other grounds, 380 Fed. Appx. 142 (3d Cir. 2010).[19] Additionally, Plaintiff must allege a specific violation of a right, privilege or immunity secured by the Constitution or other law. See Figueiras, 426 N.J. Super. at 468-69; Matthews v. N.J. Inst. of Tech., 717 F. Supp. 2d 447, 452 (D.N.J. 2010).

Here, Plaintiff's claim fails as he does not even allege that Amtrak was a state actor acting under color of state law. See Flythe v. Ralph Lauren, Inc., 2016 U.S. Dist. LEXIS 159314, at *17 (D.N.J. Nov. 17, 2016) (dismissing NJCRA claim where plaintiff failed to allege facts showing state action by private employer).[20] Rather, he simply asserts, in a conclusory manner, that undefined "Defendants" were "acting under color of state or contractual authority…" (Compl. ¶ 21).

Plaintiff also fails to identify the specific violations at issue as he only asserts deprivation of "rights including privacy, equal protection, and employment rights." (Compl. ¶ 21). See Matthews, 717 F. Supp. 2d at 452 (noting that "a plaintiff must allege a specific constitutional violation."); Celestine v. Foley, 2010 U.S. Dist. LEXIS 132511, at *6 (D.N.J. Dec. 14, 2010) (dismissing the plaintiff's NJCRA claim because he failed to identify which specific constitutional provisions the defendants allegedly violated, even though other counts of the complaint alleged

---

[19] A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 13.
[20] A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 14.

constitutional violations);[21] Tumpson v. Farina, 218 N.J. 450, 473 (2014)(holding the NJCRA provides cause of action only where plaintiff pleads deprivation of a substantive right secured by state or federal law). It is well settled that reputational harm, intrusive monitoring, and dissatisfaction with litigation outcomes are not constitutional injuries. Paul v. Davis, 424 U.S. 693, 701 (1976) (damage to reputation alone, without more, does not implicate any liberty or property interest protected by the Constitution). Although Plaintiff references equal protection violations (Compl. ¶ 21), he does not allege any particulars and does not plead any of the essential elements of an equal protection claim. Nor does Plaintiff sufficiently allege or identify the purported right to privacy or employment rights at issue. Courts have consistently rejected attempts to repackage litigation or employment disputes as civil rights claims. Lapolla v. Cnty. of Union, 449 N.J. Super. 288, 306 (App. Div. 2017); Garcia v. N. Brunswick Pub. Sch., 2020 U.S. Dist. LEXIS 159130, at *13 (D.N.J. Sep. 1, 2020) (dismissing NJCRA claim where plaintiff did not clearly tie it to a specific constitutional violation; declining to recast the pleading to save the claim even though NJCRA was pled alongside § 1983).[22]

Finally, Plaintiff's NJRCA claim is precluded by the CEPA waiver provision. See N.J.S.A. 34:19-8; Young v. Schering Corp., 141 N.J. 16, 25 (1995). Plaintiff brings a CEPA claim at Count I asserting he was subjected to unlawful conduct and retaliation (Compl. ¶ 20), which is similar to the purported deprivation of "employment rights" set forth in support of his NJCRA claim. Further, Plaintiff notes the purported unlawful actions "form a separate basis for the present civil rights and retaliation claims." (Compl. ¶ 11.1). As such, the NJCRA claim is waived and subject to dismissal as Plaintiff is relying on the same or similar facts to support both claims. See

[21] A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 15.
[22] A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 16.

Matthews, 717 F. Supp. 2d at 452-53; Hillburn v. Bayonne Parking Authority, 2009 U.S. Dist. LEXIS 6762, at **26-29 (D.N.J. 2009);[23] Young, 141 N.J. at 27.

In sum, Count II is unsupported by any plausible theory of liability and fails as a matter of law.

## POINT V

## PLAINTIFF'S INVASION OF PRIVACY AND INTRUSION UPON SECLUSION CLAIM (COUNT III) FAIL AS A MATTER OF LAW.

Plaintiff's claim for invasion of privacy by intrusion upon seclusion fails because he does not plead the required elements. Further, it appears the only conduct alleged in support of this claim arises from litigation-related conduct in the FELA Action and thus, the litigation privilege precludes such a claim as to both Mr. Bonventre and Amtrak.

To state a claim, Plaintiff must allege (1) an intentional intrusion, physical or otherwise, (2) into private affairs, solitude, or seclusion, (3) in a manner highly offensive to a reasonable person. Hennessey v. Coastal Eagle Point Oil Co., 129 N.J. 81, 94–95 (1992); In re Nickelodeon Consumer Privacy Litig., 827 F.3d 262, 293 (3d Cir. 2016). The threshold is high: the conduct must be so offensive that a reasonable person would strongly object. Stengart v. Loving Care Agency, Inc., 201 N.J. 300, 316-17 (2010). Courts consistently reject claims where the allegations involve public information or general observations rather than a genuine intrusion into a private sphere. Bisbee v. John C. Conover Agency, Inc., 186 N.J. Super. 335, 340 (App. Div. 1982) (no intrusion claims where alleged conduct concerned information that was public or known); D'Ambly v. Exoo, 2021 U.S. Dist. LEXIS 210315, at *8 (D.N.J. Nov. 1, 2021) (no wrong where plaintiff's activities are already public or known).[24]

---

[23] A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 17.
[24] A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 18.

Plaintiff's Complaint does not satisfy this standard. Plaintiff vaguely references "surveillance," "monitoring," and "tracking devices," but pleads no facts about when, how, or what private information was accessed. (Compl. ¶¶ 12–18). Such conclusory allegations are insufficient. Soliman v. Kushner Cos., Inc., 433 N.J. Super. 153, 172–73 (App. Div. 2013) (affirming dismissal where claims consisted of vague observations and generic surveillance allegations); Jevremovic v. Courville, 2025 U.S. Dist. LEXIS 131994 , at *14 (D.N.J. July 11, 2025) (dismissing claim where plaintiff failed to allege defendants themselves engaged in wrongful intrusion); [25] Stengart, 201 N.J. at 316 (absence of concrete facts showing intrusion into a private sphere is fatal). Here, the conduct alleged (i.e., litigation surveillance and related investigation) is tied to Plaintiff's prior FELA Action and involves matters of public record, not private affairs. Such activity cannot support an intrusion claim and, in any event, is barred by the absolute litigation privilege. See Point II, supra.

Plaintiff also fails to show that Defendants intruded into matters where he had a reasonable expectation of privacy. Information disclosed in litigation, or surveillance in public or semi-public places like a VA facility, does not qualify as "secluded" or "private" for this tort. Soliman, 433 N.J. Super. at 173–74; see also White v. White, 344 N.J. Super. 211, 222–23 (App. Div. 2001) (no reasonable expectation of privacy in a shared family computer located in plaintiff's own home); Villanueva v. Innovative Investigations, Inc., 420 N.J. Super. 353, 360–64 (App. Div. 2011) (no invasion of privacy where GPS device was placed on plaintiff's car; no reasonable expectation of privacy in public movements); Mills v. Golden Nugget Atl. City LLC, 2021 U.S. Dist. LEXIS 156166, at *51 (D.N.J. 2021)[26] (rejecting intrusion claim where plaintiff had no reasonable expectation of privacy in a public lounge). Plaintiff pleads no facts suggesting Defendants pried

[25] A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 19.
[26] A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 20.

into a genuinely private sphere, and discovery disputes or investigatory activities cannot support liability.

Even if Plaintiff could show some sort of privacy interest, New Jersey law requires balancing that interest against Defendants' legitimate need to investigate pending litigation. CNA Ins. Co. v. Waters, 197 N.J. Super. 247, 258 (App. Div. 1984) (requiring balance of privacy against defendant's interests). The Third Circuit has likewise rejected privacy claims where an employer's limited use of medical information was outweighed by legitimate business needs. Doe v. Southeastern Pennsylvania Transportation Authority, 72 F.3d 1133, 1143 (3d Cir. 1995) (reversing and finding no violation where employer accessed prescription records for health-plan monitoring). Here, Plaintiff's own pleadings allege only that Amtrak retained investigators in connection with the FELA Action. (Compl. ¶¶ 10–14). Such routine investigatory activity, tied to defending a civil claim, is not a "highly offensive" intrusion as required to state a claim.

As this claim rests only on vague allegations of surveillance and litigation conduct dismissal is appropriate.

## POINT VI

## PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIMS (COUNT IV) FAIL AS A MATTER OF LAW.

Plaintiff's claims for IIED and NIED fail as a matter of law because they are based on the same facts as the LAD claim and are therefore preempted by the LAD. Plaintiff's allegations also fall short of the legal standards required to state a claim for either IIED or NIED.

### A. Plaintiff's IIED And NIED Claims Are Preempted By The LAD.

Plaintiff's IIED and NIED claims are preempted by the LAD and subject to dismissal. See Catalane v. Gillian Instrument Corp., 271 N.J. Super. 476, 492 (1994). Courts routinely dismiss

common law claims, including intentional tort claims, that are based on the same factual predicate as, and seek the same remedy as, a plaintiff's LAD claim. See Metzler v. Am. Transp. Group, L.L.C., 2008 U.S. Dist. LEXIS 10562, at *13 (D.N.J. 2008);[27] Quarles v. Lowe's Home Centers, Inc., 2006 U.S. Dist. LEXIS 97336, at *11 (D.N.J. 2006).[28] Here, Plaintiff predicated his IIED and NIED claims, i.e., "Defendants outrageous and extreme conduct," on the same facts as his LAD claim at Count VI. Therefore, Plaintiff's IIED and NIED claims are preempted and must be dismissed.

### B. Plaintiff Fails To Plead The Elements Of IIED.

Plaintiff's IIED claim also fails as he is unable to point to any support for his IIED claim. To successfully plead a IIED claim Plaintiff must establish: (1) intentional or reckless acts by the defendant designed to inflict emotional distress; (2) conduct so "outrageous in character, and so extreme in degrees, as to go beyond all bound of decency;" (3) that such conduct proximately caused Plaintiff's emotional distress; and (4) that the emotional distress was so severe that no reasonable person would be expected to endure it. See Buckley v. Trenton Sav. Fund. Society, 111 N.J. 355, 366 (1988); Ingraham v. Ortho-McNeil Pharm, 422 N.J. Super. 12, 19-20 (App. Div. 2011).

Employment-related disputes, investigations connected to litigation, and business communications, rarely meet this threshold. Griffin v. Tops Appliance City, Inc., 337 N.J. Super. 15, 23 (App. Div. 2001) (reaffirming that IIED requires conduct so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency). The Complaint pleads no facts showing threats, physical intimidation, home intrusion, publication of intimate details, or other conduct comparable to the narrow circumstances where courts allowed IIED claims. Cox v.

---

[27] A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 21.
[28] A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 22.

Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir.1988) ("[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress.") Conclusory allegations of "perjury, defamation, and other misconduct" as well as undefined "ongoing harassment" and surveillance of "collaboration" and "retaliation," are not outrageous or so extreme to "go beyond all possible bounds of decency," and are legally insufficient.

### C. Plaintiff's NIED Claim Fails As A Matter Of Law.

Plaintiff has not alleged sufficient facts to maintain a NIED claim. To successfully plead a NIED claim Plaintiff must plead: (1) the defendant owed the plaintiff a legal duty of care; (2) the defendant breached the duty of care; (3) the plaintiff suffered substantial emotional distress; and (4) the defendant's negligence proximately caused the emotional distress. See Decker v. Princeton Packet, 116 N.J. 418, 429 (1989).[29] However, "[t]o recover under a negligence theory, it is paramount that a defendant first owe the plaintiff a duty." Kernan v. One Wash. Park Urban Renewal Assocs., 154 N.J. 437, 445 (1998).

Here, Plaintiff's complaint fails to include any allegations that speak to any of the elements of a NIED claim and indeed does not even allege Defendants negligently inflicted emotional distress upon him. (Compl. at Count IV). Plaintiff fails to allege Defendants owed him a duty of care. See Graddy v. Deutsche Bank Trust Co., 2012 U.S. Dist. LEXIS 29154, at *5 (D.N.J. 2016) (dismissing the plaintiffs' negligence claim for their failure, among other things, to "plead facts to support their assertion that Deutsche Bank owed a duty to Plaintiffs").[30]

---

[29] New Jersey recognizes NIED claims only in narrow circumstances and Portee v. Jaffee, 84 N.J. 88, 97 (1980) (permitting recovery for emotional distress where plaintiff witnessed the death or serious injury of a close family member due to a defendant's negligence and setting forth stringent elements), is not applicable as Count IV makes no allegations regarding death or serious injury.

[30] A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 23.

Further, Plaintiff does not allege any actions by Defendants that fell below the undefined applicable standard of care; that Defendants were negligent; or that any purported negligence by Defendants proximately caused her emotional distress. See Mascio v. Mullica Twp. Sch. Dist., 2016 U.S. Dist. LEXIS 123864, at *9-10 (D.N.J. 2016) ("Even assuming that Defendants owe Plaintiff a duty of care, the Court finds that Plaintiff nonetheless fails to plead a plausible claim for negligence because she offers no evidence of Defendant's breach of duty.").[31] Dismissal, as a matter of law, is appropriate.

**POINT VII**

**PLAINTIFF'S AIDING AND ABETTING AND CIVIL CONSPIRACY CLAIMS (COUNT V) FAIL AS A MATTER OF LAW.**

Plaintiff's aiding and abetting and civil conspiracy claims fail because both require a viable underlying tort and well-pled facts establishing secondary liability. McCormac v. Qwest Commc'ns Intern., Inc., 387 N.J. Super. 469, 484 (App. Div. 2006) (aiding and abetting imposes secondary liability) (citing Tarr v. Ciasulli, 181 N.J. 70, 84 (2004)); Banco Popular N. Am. v. Gandi, 184 N.J. 161, 177 (2005) (civil conspiracy requires a separate underlying tort). Plaintiff does not identify any underlying tort which is the basis for his aiding and abetting and civil conspiracy claims.

**A. Plaintiff's Aiding And Abetting Claim Fails As A Matter of Law.**

As an initial matter, Plaintiff's Complaint is unclear as to the basis for aiding and abetting, merely alleging Defendants "acted in concert…to retaliate" without specifying the underlying statute or tort. (Compl. ¶ 25). This fails basic pleading requirements; courts routinely dismiss such conclusory claims. Onyx Enters. Canada, Inc. v. Royzenshteyn, 2025 LEXIS 102913, at *42

[31] A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 24.

(D.N.J. Jan. 8, 2025) (dismissing aiding and abetting claim where underlying tort is dismissed);[32] Avataa USA, LLC. v. Yaminsky, 2025 U.S. Dist. LEXIS 53558, at *8 (D.N.J. Mar. 24, 2025) ("It is well-settled law that when a plaintiff brings a civil conspiracy or aiding and abetting claim, [he] must allege a viable underlying tort.").[33]

Plaintiff cannot rely on CEPA (Count I), NJCRA (Count II), ADA (Count VI), or NIED (Count IV), as those statutory and common law claims do not allow aiding and abetting liability. See Espinosa v. County of Union, 2005 U.S. Dist. LEXIS 36563, at *30 (D.N.J. Aug. 30, 2005) (LAD allows aiding and abetting, CEPA does not);[34] Lapolla v. Cnty. Of Union, 449 N.J. Super. 288, 306 (App. Div. 2017) (NJCRA does not allow aiding and abetting claims); Tarr v. Ciasulli, 181 N.J. 70, 84 (2004) (aiding and abetting applies to intentional torts, not negligence); Kehoe v. Hard Rock Hotel & Casino, 2025 U.S. Dist. LEXIS 115110, at *6 (D.N.J. June 12, 2025) (ADA does not impose individual liability).[35]

Plaintiff cannot rely on his privacy claim (Count III), IIED claim (Count IV), or the LAD claim (Count VI), as those claims are deficient and subject to dismissal as explained in Points II, V, VI, supra and Point VIII, infra. Without a viable underlying violation, the aiding and abetting theory fails. Banco Popular, 184 N.J. at 178 (explaining that both aiding and abetting and civil conspiracy impose derivative liability that cannot stand absent an underlying tort). Further, Plaintiff does not plausibly plead the required elements of aiding and abetting, namely, a primary violation, actual knowledge, and substantial assistance. Id. Plaintiff alleges no facts showing actual knowledge—only conclusory assertions that Defendants "collaborated" or "worked together." (Compl. ¶ 25).

---

[32] A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 25.
[33] A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 26.
[34] A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 27.
[35] A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 28.

Further, the intracorporate conspiracy doctrine bars claims against Amtrak and its agent Mr. Bonventre. A corporation and its agents are considered a single entity when acting within the scope of corporate representation and therefore cannot conspire with themselves. Sun Pharm. Indus., Inc. v. Core Tech Solutions, Inc., 2013 N.J. Super. Unpub. LEXIS 1126, at *19 (App. Div. May 13, 2013) (explaining that an entity cannot conspire or aid and abet itself; liability is derivative of a primary violation).[36] It then follows that Amtrak cannot "aid and abet" its own conduct. Heffernan v. Huner, 189 F.3d 405, 412–13 (3d Cir. 1999) (holding that defendants could not be deemed conspirators because they acted within the attorney-client relationship).

**B. Plaintiff's Civil Conspiracy Claim Fails As A Matter Of Law.**

Civil conspiracy requires "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means," with an agreement and an overt act resulting in damage. Banco Popular, 184 N.J. at 177; A. & M. Wholesale Hardware Co., Inc. v. Circor Instrumentation Tech., Inc., 2014 U.S. Dist. LEXIS 23032, at *11 (D.N.J. Feb. 24, 2014).[37] Again, Plaintiff does not identify a viable underlying tort and pleads no facts regarding any agreement, common plan, or specific unlawful act. Banco Popular, 184 N.J. at 178; Onyx Enters. Canada, Inc, 2025 LEXIS 102913, at *6 (dismissing conspiracy claim where underlying tort is dismissed). Plaintiff's pleading falls short on every element: no underlying tort, no facts identifying an actual agreement, and no specific communication or coordinated steps toward an unlawful objective. For all these reasons, Count V must be dismissed.

[36] A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 29.
[37] A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 30.

## POINT VIII

## PLAINTIFF'S FAILURE TO ACCOMMODATE CLAIMS UNDER THE LAD AND ADA (COUNT VI) FAIL AS A MATTER OF LAW.

Plaintiff's LAD and ADA failure to accommodate claims fail as they are barred by the statute of limitations, failure to exhaust, and because Plaintiff failed to sufficiently plead a claim. Plaintiff's claims also fail as to Mr. Bonventre because there is no individual liability under the ADA and Plaintiff has not alleged a viable LAD aiding and abetting claim against him.

### A. Plaintiff's ADA Claim Is Subject To Dismissal.

Plaintiff's ADA claim is barred as he failed to exhaust his administrative remedies. Plaintiff does not assert that he filed a charge of discrimination or received a right to sue notice. Webb v. City of Phila., 562 F.3d 256, 262 (3d Cir. 2009) ("Before bringing suit under Title VII in federal court, a plaintiff must first file a charge with the EEOC."); Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) ("Plaintiffs bringing employment discrimination charges under the ADA must comply with the procedural requirements set forth in Title VII of the Civil Rights Act of 1964, as amended, at 42 U.S.C. § 2000e-5); See 42 U.S.C. § 12117(a). As such, Plaintiff's ADA claim is subject to dismissal. See Anjelino v. New York Times Co., 200 F.3d 73, 87-88 (3d Cir. 1999) (noting that a failure to exhaust defense may be properly raised on a motion to dismiss); Burgh v. Borough Council of Montrose, 251 F.3d 465, 470 (3d Cir. 2001) (the 90 day-period for filing suit after receipt of a right-to-sue letter is strictly construed; failure to comply requires dismissal).

Plaintiff also fails to state a claim under the ADA. To maintain a failure to accommodate claim, Plaintiff must establish that (1) he was disabled within the meaning of the ADA, and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." Armstrong v.

Burdette Tomlin Mem'l Hosp., 438 F.3d 240, 246 (3d Cir. 2006). A plaintiff is disabled for purposes of the ADA if he (1) has a "physical or mental impairment that substantially limits one or more" of his "major life activities." 42 U.S.C. § 12102(1)).

Here, Plaintiff does not adequately allege that he suffers from a qualified disability. Plaintiff alleges that he has a mental disability (Compl. ¶ 9) and that Amtrak denied him "sedentary roles" (Compl. ¶ 16) but provides no further detail explaining how the undefined mental disability limits any major life activity. Nor does he identify the alleged accommodation he requested that Amtrak failed to provide. While Plaintiff does not need to provide "a *detailed* description of the limitations his alleged disability presents," at the pleading stage "he still must provide facts that state a claim of disability under of the law." Karipidis v. Ace Gaming LLC, 2010 U.S. Dist. LEXIS 56617, at *9 (D.N.J. June 9, 2010) ("By simply stating that the plaintiff lives with an injury, illness or impairment without alleging that the impairment substantially limits a major life activity creates a defect in the Complaint.")[38] (emphasis in original). As such, dismissal of Plaintiff's ADA claim is warranted.[39]

**B. Plaintiff's LAD Claim Is Subject To Dismissal.**

Claims under the LAD are subject to a two-year statute of limitations. Montells v. Haynes, 133 N.J. 282, 286 (1993). Here, Plaintiff did not plead any dates as to when Amtrak allegedly denied his reasonable accommodation requests, apparently attempting to circumvent the accrual of the statute of limitations. (Compl. ¶¶ 16, 27). However, Plaintiff's attempt to circumvent the statute of limitation establishes that his complaint fails to meet the pleading requirements of Fed.

[38] A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 31.

[39] The ADA claim is also subject to dismissal as to Mr. Bonventre, Amtrak's outside litigation counsel, as the ADA does not impose individual liability on non-employers. See Koslow v. Commonwealth of Pa., 302 F.3d 161, 178 (3d Cir. 2002). Plaintiff did not allege that Mr. Bonventre was his employer within the meaning of 42 U.S.C. § 12111(5)(A) or that Mr. Bonventre exercised control over Plaintiff's employment.

R. Civ. P. 8(a) and requires dismissal as he failed to include sufficient information for Defendants to respond to his pleading or determine what alleged denials are at issue. Accordingly, Plaintiff's deficient pleading warrants dismissal of the LAD failure-to-accommodate claim as time-barred.

Plaintiff also fails to state a claim under the LAD. "The elements of failure to accommodate claims under the LAD and the ADA are so similar that the two may be addressed together." Rich v. State, 294 F. Supp. 3d 266, 278 (D.N.J. 2018) (citing Armstrong, 438 F.3d at 246 n.12). Similar to the ADA claim, Plaintiff did not adequately plead that he was a person with a disability within the meaning of the LAD. See McCoy v. Port Liberte Condo. Ass'n # 1, Inc., 2003 U.S. Dist. LEXIS 26462, at *33 (D.N.J. Sept. 2003) (Although the term "disability" is defined broadly, it does not encompass all conditions.).[40] While Plaintiff references an undefined mental disability, and asserts Defendants alleged action resulted in mental harm by worsening certain conditions, he does not identify what specific disability allegedly required accommodation or what purported reasonable accommodation was denied, much less how it would enable him to perform the essential functions of his job. See Victor v. State, 203 N.J. 383, 409-10 (2010) (explaining that a plaintiff must allege and demonstrate he is qualified to perform the essential functions of his job, with or without accommodation).

### C. Plaintiff's LAD Claim Against Mr. Bonventre Fails.

Mr. Bonventre cannot be held liable for a violation of the LAD as Plaintiff did not specifically allege an aiding and abetting theory or cause of action in connection with the LAD claim.[41] See N.J.S.A. 10:5-12(a). Plaintiff's Complaint also does not contain any aiding and

---

[40] A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 32.

[41] Plaintiff's LAD claim also fails as to Mr. Bonventre as Plaintiff cannot establish any liability as to Amtrak. See Photis v. Sears Holding Corp., 2013 U.S. Dist. LEXIS 104152, at *29 (D.N.J. July 25, 2013) (citation omitted) (holding that an employee's aiding and abetting claim under the LAD against an individual failed because the LAD claims against the employer failed). A true and correct copy of this decision is attached to the Macaluso Cert. as Exhibit 33.

abetting language with regard to Mr. Bonventre or assert that Mr. Bonventre knowingly and substantially assisted Amtrak's alleged violation. See Clayton v. City of Atl. City, 722 F. Supp. 2d 581 (D.N.J. 2010) (dismissing plaintiff's LAD claims against the individual defendants because individuals cannot be held liable for a violation of the LAD and the "Complaint [did] not [explicitly] assert an aiding or abetting claim."); Tarr v. Ciasulli, 181 N.J. 70, 84 (2004) (explaining what is required to establish an aiding and abetting claim) (citation omitted). As such, Count VI must be dismissed as to Mr. Bonventre.

## CONCLUSION

For all the reasons set forth above, Plaintiff's Complaint fails to satisfy the most basic pleading requirements under Fed R Civ. P. 12(b)(6). The allegations are conclusory, speculative, and unsupported by well-pled facts, and Plaintiff has not stated any cognizable claim against Defendants. Each of Plaintiff's claims is subject to dismissal because they are either time-barred, preempted, or substantively deficient. Collectively, the Complaint fails to plead facts establishing any plausible cause of action. Accordingly, dismissal, with prejudice, of the Complaint in its entirety, as a matter of law with prejudice, as against both Amtrak and Mr. Bonventre, is warranted.

Respectfully submitted,

JACKSON LEWIS P.C.

By: */s Carla D. Macaluso*
Carla D. Macaluso
Kea S. Noyan

Attorneys for Defendants National Railroad Passenger Corporation a/k/a Amtrak and John Bonventre

Dated: October 1, 2025

4929-6997-8990, v. 1