**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BELTON C. HAIG SR., | Civil Action No. 2:25-cv-15438 – CCC – AME |
| Plaintiff, | **RETURN DATE: January 20, 2026** |
| v. | **Oral Argument Requested** |
| NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK); VRC INVESTIGATIONS (formerly PRIME SOURCE INVESTIGATIONS)' EDWARD BELENGUER, individually and as employee of VRC Investigations; LEROY KELLY II, individually and as employee of VRC Investigations; JOHN BONVENTRE, individually and as attorney for Landman Corsi Ballaine & Ford P.C. | |
| Defendants. | |

---

**BRIEF ON BEHALF OF DEFENDANTS VRC INVESTIGATIONS, EDWARD BELENGUER, AND LEROY KELLY, II IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT WITH PREJUDICE**

---

**Of Counsel and on the Brief**
Derrick A. Grant, Esq. (ID No. 165052015)
Anthony L. Bush, Esq. (ID No. 314272021)

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT..................................................................................... 1

PROCEDURAL HISTORY ........................................................................................ 2

STATEMENT OF FACTS ......................................................................................... 4

LEGAL ARGUMENT ................................................................................................ 5

I.    PLAINTIFF FAILS TO STATE ANY CLAIM UPON WHICH RELIEF CAN BE

GRANTED ................................................................................................................. 5

II.    ALL CLAIMS ARE BARRED BY THE LITIGATION PRIVILEGE............................. 6

III.    PLAINTIFF'S STATUTORY CLAIMS FAIL AS A MATTER OF LAW..................... 9

A.    The CEPA Claim (Count I) Fails Because VRC Defendants Are Not Plaintiff's

Employer. .................................................................................................................. 10

B.    Plaintiff's NJLAD/ADA Claims (Count VI) Fails........................................... 12

C.    Plaintiff's NJCRA Claim (Count II) Fails Because VRC Defendants Are Not State

Actors. ....................................................................................................................... 12

IV.    PLAINTIFF'S COMMON LAW CLAIMS FAIL AS A MATTER OF LAW .............. 13

A.    The Invasion of Privacy Claims Fail as a Matter of Law. ................................. 13

B.    Plaintiff's Claim for Civil Conspiracy or Aiding and Abetting is Legally Deficient ....... 15

V.    THE CLAIMS ARE TIME-BARRED UNDER THE APPLICABLE STATUTES OF

LIMITATIONS............................................................................................................ 17

CONCLUSION............................................................................................................ 18

i

## <u>TABLE OF AUTHORITIES</u>

### Cases

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, (2009) ............................................................. 6, 13

<u>Banco Popular North America v. Gandi</u>, 184 N.J. 161 (2005) ..................................... 16

<u>Bangura v. City of Philadelphia</u>, 338 Fed. Appx 261, 264 (3d Cir. 2009) ..................... 6

<u>Baraka v. McGreevey</u>, 481 F.3d 187, 195 (3d Cir.2007) ............................................. 6

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570, (2007) ...................................... 6, 13

<u>Blackburn v. United Parcel Service, Inc.</u>, 3 F.Supp.2d 504, 512, *affirmed* 179 F.3d 81

   (D.N.J.1998) ............................................................................................................ 11

<u>Broadcom Corp. v. Qualcomm Inc.</u>, 501 F.3d 297, 306 (3d Cir. 2007) ......................... 5

<u>Devlin v. Greiner</u>, 147 N.J.Super. 446, 460, (Law Div.1977) ...................................... 8

<u>Erickson v. Marsh & McLennan Co., Inc.</u>, 117 N.J. 539, 563, (1990) .......................... 7

<u>Fleming v. Correctional Healthcare Solutions, Inc.</u>, 164 N.J. 90, (N.J.2000) ............... 11

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d at 210–11 ...................................................... 6

<u>Gebhart v. Steffen</u>, 574 Fed. Appx. 156, 158 (3d Cir. 2014) ...................................... 5

<u>Gonzalez v. New Jersey Department of Children and Families</u>, 545 F.Supp. 3d 178 (2021) ....... 12

<u>Hawkins v. Harris</u>, 141 N.J. 207, 215 (1995) .................................................. 6, 7, 8, 15

<u>Japhet v. Francis E. Parker Mem'l Home, Inc.</u>, CIV.A. 14-01206 SRC, 2014 WL 3809173, at *1

   (D.N.J. July 31, 2014) ............................................................................................... 6

<u>Kinsella v. Welch</u>, 362 N.J. Super. 143, 156 (App. Div.2003) .................................... 13

<u>Leavitt v. Bickerton</u>, 855 F.Supp. 455 (D.Mass.1994) ............................................... 7

<u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 929 (1982) ........................................... 13

<u>Peterson v. Ballard</u> 292 N.J.Super. 575 (App. Div. 1996) ................................................................. 7

<u>Santiago v. City of Vineland</u>, 107 F.Supp.2d 512 (2000) ................................................................ 12

<u>Silberg v. Anderson</u>, 50 Cal.3d 205(1990) ...................................................................................... 7

<u>Smith v. Conseco Life Ins. Co.</u>, 2:13-CV-5253 WHW, 2014 WL 3345592, at *2 (D.N.J. July 8, 2014) ............................................................................................................................................ 5

<u>Turbe v. Government of Virgin Islands</u>, 938 F.2d 427, 428 (3d Cir. 1991) ..................................... 5

<u>Villanova v. Innovative Investigations, Inc.</u> 420 N.J. Super. 353, 363-364 (App. Div. 2011)...... 13

<u>Yurick v. State</u>, 184 N.J. 70, 875 (N.J.2005) ................................................................................... 10

**Statutes**

42 <u>U.S.C.</u> 1983 .................................................................................................................................. 12

N.J.S.A. § 10:6-2(c) ........................................................................................................................ 12

<u>N.J.S.A.</u> § 34:19–2(a) .......................................................................................................................11

<u>N.J.S.A.</u> § 34:19–3 .......................................................................................................................... 10

<u>N.J.S.A.</u> 2A:14–2 ............................................................................................................................ 17

**Rules**

<u>Fed</u> <u>R</u> <u>Civ. P.</u> 12(b)(6) ................................................................................................. 3, 5, 6, 16

<u>Fed</u> <u>R</u> <u>Civ. P.</u> 12(c). ............................................................................................... 1, 2, 3, 5, 6, 16

<u>Fed</u> <u>R</u> <u>Civ. P.</u>12(b) ........................................................................................................................ 3

<u>Fed</u> <u>R</u> <u>Civ. P.</u>12(h)(2) ................................................................................................................. 3, 5

## <u>PRELIMINARY STATEMENT</u>

Defendants VRC Investigations, Edward Belenguer, and Leroy Kelly, II. (collectively, the "VRC Defendants") respectfully submit this memorandum of law in support of their motion for judgment on the pleadings pursuant to <u>Fed</u> <u>R</u> <u>Civ.</u> <u>P.</u> 12(c). The VRC Defendants hereby join in, and adopt in full, the arguments asserted by co-defendants National Railroad Passenger Corporation ("Amtrak") and John Bonventre ("Bonventre") in its Motion to Dismiss filed on October 1, 2025 (Dkt. No. 9) as to all six counts of the Complaint. To the extent necessary for clarity, the VRC Defendants supplement Amtrak's arguments below with respect to the three statutory causes of action under the Conscientious Employee Protection Act ("CEPA"), the New Jersey Civil Rights Act ("NJCRA"), and the New Jersey Law Against Discrimination/Americans with Disabilities Act ("NJLAD/ADA") to address why those statutes independently do not apply to the VRC Defendants as non-employers and non-state actors.

Like Amtrak, the VRC Defendants seek dismissal of the Complaint in its entirety because it fails to state any claim upon which relief can be granted. The VRC Defendants are private investigators who were retained by Amtrak in connection with prior litigation brought by Plaintiff under the Federal Employers' Liability Act ("FELA"). All conduct alleged in the Complaint occurred within the context of that judicial proceeding, and in furtherance of Amtrak's defense.

Plaintiff now seeks to re-litigate issues arising from that prior FELA action by recasting lawful investigative and testimonial activities as tortious or discriminatory conduct. A jury in that prior action heard the testimony, evaluated the evidence, and rendered its verdict in the Plaintiff's favor. The credibility of witnesses and the truth of that testimony have already been determined. It is not the role of this Court to re-examine those findings or to augment Plaintiff's prior recovery

1

by entertaining allegations of perjury or misconduct. The present Complaint is, in substance, a collateral attack on a concluded case, not a viable cause of action.

Every count asserted against the VRC Defendants fails as a matter of law. The Complaint repackages surveillance and litigation-related communications into new causes of action under CEPA, NJCRA, NJLAD/ADA, and several common-law tort theories. None of these statutes or torts applies to the VRC Defendants as they were not Plaintiff's employer or supervisor, they did not act under color of law, and their conduct is privileged under well-established New Jersey precedent protecting participants in judicial proceedings.

Even if the privilege were not dispositive, the Complaint remains deficient as it fails to state a cause of action against the VRC Defendants and the claims are untimely. Each claim fails independently because all counts are facially deficient against the VRC Defendants. Furthermore, all alleged conduct occurred more than two years before this action was filed and is barred by the applicable statutes of limitation.

Accordingly, the VRC Defendants respectfully request that the Court grant judgment on the pleadings pursuant to Rule 12(c) and dismiss the Complaint with prejudice.

## PROCEDURAL HISTORY

This action arises from Plaintiff's prior personal injury litigation against Amtrak under FELA. In that case, Plaintiff alleged injuries from an October 23, 2016 motor vehicle accident involving an Amtrak van. Amtrak retained VRC Investigations ("VRC"), a private investigative firm, to assist in its defense. The FELA action was actively litigated for more than five years culminating in a jury trial in October 2023. The jury rendered a verdict in Plaintiff's favor, and final judgment was entered on November 16, 2023. The court denied Plaintiff's post-judgment motions in May 2025, confirming that the matter had been fully resolved.

Undeterred by the outcome of the prior FELA litigation, Plaintiff filed the present Complaint in the Superior Court of New Jersey, Essex County, on August 1, 2025. In substance, the pleading seeks to re-litigate issues already resolved in that case by recasting lawful investigative and testimonial conduct as new statutory and tort claims. Plaintiff alleges that Amtrak, its counsel, and the VRC Defendants – who were retained solely as investigators in the prior litigation – engaged in "perjury, defamation, surveillance, and other misconduct" during the FELA proceedings. These allegations, however, stem entirely from the VRC Defendants' legal performance of their job as investigators in a now concluded judicial proceeding. The Complaint's attempt to transform ordinary litigation activity into actional misconduct underscores its fundamental deficiency and the impropriety of extending liability to nonparties for participating in a prior case where Plaintiff was simply dissatisfied with the outcome.

On September 10, 2025, Amtrak timely removed the present matter to this Court, asserting federal-question jurisdiction and jurisdiction based on Amtrak's federal charter; the VRC Defendants filed an Answer on September 30, 2025, preserving all defenses under Fed R Civ. P.12(b). Amtrak subsequently moved to dismiss the Complaint under Fed R Civ. P. 12(b)(6). The VRC Defendants now move for judgment on the pleadings pursuant to R.12(c) and Fed R Civ. P.12(h)(2).

## STATEMENT OF FACTS

1. Plaintiff alleges that he was employed by Amtrak beginning in 2016 and sustained injuries in an October 23, 2016, motor vehicle accident involving an Amtrak van. (Compl. at ¶¶ 9-10).

2. As a result, Plaintiff pursued a personal injury action against Amtrak. The jury heard testimony from the VRC Defendants, evaluated the evidence, and rendered its verdict in his favor. (Id. at ¶¶ 11-11.1).

3. In connection with that prior litigation, Plaintiff alleges that VRC Investigations was contracted by Amtrak to conduct surveillance and other services within the State of New Jersey. (Id. at at ¶ 3).

4. Plaintiff alleges that he was retaliated against by Amtrak after he reported internal misconduct and injuries sustained during his employment. (Id. at  4).

5. He further alleges the retaliation included illegal surveillance, denial of disability accommodations, perjury, and civil rights violations. (Id. at 4).

6. Plaintiff alleges that the retaliation began in January 2022. (Id. at. at ¶ 12).

7. Plaintiff alleges that between January 2022, and September 2023, the VRC Defendants followed, observed, and recorded him in various public and medical settings as part of their investigation (Id. at. at ¶¶ 12-13).

8. Plaintiff alleges that on July 7, 2022, Edward Belenguer and Leroy Kelly provided false testimony during their depositions. (Id. at ¶ 15).

9. Plaintiff alleges that during court proceedings from October 30, 2023, to November 6, 2023, Edward Belenguer and Leroy Kelly again provided false testimony. (Id. at ¶ 15).

## LEGAL ARGUMENT

I.   **PLAINTIFF FAILS TO STATE ANY CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Substantively, VRC Defendants rely on the arguments set forth in the joint brief submitted on behalf of co-defendants, Amtrak and Bonventre, in support of their Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6). Having already answered, VRC Defendants hereby move for judgment on the pleadings, pursuant to Rule 12(c). It provides that: "After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." *See also* Turbe v. Government of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991):

> A Rule 12(c) motion for judgment on the pleadings may be filed after the pleadings are closed. ... Rule 12(h)(2) provides that a defense of failure to state a claim upon which relief can be granted [may be made not only by a motion pursuant to Rule 12(b)(6) but] may also be made by a motion for judgment on the pleadings.

Rule 12(b)(6) motions to dismiss and Rule 12(c) motions for judgment on the pleadings for failure to state a claim "are judged according to the same standard." Gebhart v. Steffen, 574 Fed. Appx. 156, 158 (3d Cir. 2014) (citing Turbe, *supra*, 938 F.2d at 428). "The differences between Rules 12(b)(6) and 12(c) are purely procedural and the pleading standards of Rule 12(b)(6) are applied to both." Id.

Thus, as recently noted in Smith v. Conseco Life Ins. Co., 2:13-CV-5253 WHW, 2014 WL 3345592, at *2 (D.N.J. July 8, 2014): Th[e] standard [for considering a Rule 12(c) motion] requires a court to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297, 306 (3d Cir. 2007) (quotation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Plausibility requires more than mere speculation: "[a] motion for judgment on the pleadings, like a motion to dismiss, will be granted if the plaintiff has not articulated enough facts to 'raise a right to relief above the speculative level.'" Bangura v. City of Philadelphia, 338 Fed. Appx 261, 264 (3d Cir. 2009) (citing Twombly). See also Japhet v. Francis E. Parker Mem'l Home, Inc., CIV.A. 14-01206 SRC, 2014 WL 3809173, at *1 (D.N.J. July 31, 2014): While the Court must construe the complaint in the light most favorable to the plaintiff, it need not accept a "legal conclusion couched as factual allegation." Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir.2007); Fowler v. UPMC Shadyside, 578 F.3d at 210–11 (3d Cir. 2009); see also Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Upon application of the foregoing standards and procedures, and for the reasons set forth below and in the moving brief submitted on behalf of co-defendants, Amtrak and Bonventre, the VRC Defendants are entitled to judgment on the pleadings dismissing Plaintiff's Complaint with prejudice.

## II.    ALL CLAIMS ARE BARRED BY THE LITIGATION PRIVILEGE

The litigation privilege is firmly established in New Jersey case law. Hawkins v. Harris, 141 N.J. 207, 215 (1995). Statements by attorneys, parties and their representatives made in the course of judicial or quasi-judicial proceedings are absolutely privileged and immune from

liability. <u>Erickson v. Marsh & McLennan Co., Inc.</u>, 117 N.J. 539, 563, (1990). the New Jersey Supreme Court reaffirmed the wide acceptance and breadth of the privilege in <u>Hawkins</u>, *supra,* 141 N.J. at 222. In <u>Hawkins</u>, the Court extended the privilege to certain allegedly defamatory statements made by private investigators in the course of pretrial discovery. <u>Id.</u> at 221. The Court found that the statements of an insurance investigator portraying the plaintiff, as an insurance cheat and as a suborner of perjury were privileged. <u>Id.</u> at 222. Given the importance to our justice system of ensuring free access to the courts, promoting complete and truthful testimony, encouraging zealous advocacy, giving finality to judgments, and avoiding unending litigation, it is not surprising that ... the litigation privilege[ ] has been referred to as "the backbone to an effective and smoothly operating judicial system." [<u>Id</u>. at 222, (quoting <u>Silberg v. Anderson</u>, 50 Cal.3d 205(1990)).]

Additionally, in <u>Hawkins</u>, *supra,* 141 N.J. at 219–220, the New Jersey Supreme Court expressly approved the analysis of the litigation privilege set forth in <u>Leavitt v. Bickerton</u>, 855 F.Supp. 455 (D.Mass.1994). In <u>Leavitt</u>, the plaintiff sued defendant's investigator for both defamation and the intentional infliction of emotional distress. <u>Ibid</u>. However, the court dismissed both claims on the basis of the litigation privilege, reasoning that a privilege against defamation would be of little value if plaintiff could state a claim based upon the intentional infliction of emotional distress using the same facts. <u>Id</u>. at 458. In <u>Peterson v. Ballard</u> 292 N.J. Super. 575 (App. Div. 1996), the court held that the litigation privilege applies to claims of intentional infliction of emotional distress (IIED) in the context of judicial or quasi-judicial proceedings. The privilege grants absolute immunity from tort liability for communications made in connection with such proceedings, provided they meet certain criteria.

In <u>Hawkins</u>, *supra,* 141 N.J. at 216, the New Jersey Supreme Court articulated a four part test to determine the applicability of the litigation privilege to the facts of a given situation. There is absolute immunity from tort liability for a communication if: (1) the statement is made in connection with a judicial or quasi-judicial proceeding; (2) by litigants, counsel or other participants authorized by law; (3) to achieve the objects, including pre-trial preparation, of a litigation; and (4) it has some connection or logical relation to the action. <u>Ibid</u>. Whether a defendant is entitled to the privilege in a particular case is a question of law. <u>Ibid</u>. (citing <u>Devlin v. Greiner,</u> 147 N.J. Super. 446, 460, (Law Div.1977)).

Here, each of Plaintiff's claims arises entirely from alleged testimony and investigatory activity undertaken during, or directly in preparation for, judicial proceedings in the prior FELA litigation. Plaintiff expressly concedes in the Complaint that all alleged misconduct by the VRC Defendants, including alleged perjury, surveillance, and coordination with Amtrak, occurred "during those proceedings" and purportedly "undermined the fairness of the process and diminished the monetary award rendered by the jury." (Compl. at ¶¶ 11.1-15). Plaintiff further alleges that VRC was contracted by Amtrak for the purpose of assisting Amtrak's defense in that prior case. (Compl. at ¶¶ 3, 12-13). That admission alone confirms that the challenged conduct was undertaken in direct, authorized service of a litigant's trial preparation and strategy.

Under <u>Hawkins</u>' four-prong test, each prong is satisfied here. Plaintiff does not dispute that the conduct occurred in connection with an active case, nor does he allege that the VRC defendants acted outside Amtrak's direction or contrary to the litigation process. In fact, his core grievance is that VRC successfully influenced the jury's perception of the case. Since the alleged testimony and investigative surveillance were plainly undertaken to aid Amtrak's defense strategy, there can

be no real question that the conduct served to achieve the objects of the litigation and bore, at minimum, a logical relation to the action.

Accordingly, even crediting Plaintiff's version of events solely for purposes of this motion, the Complaint confirms on its face that the alleged conduct is absolutely privileged under New Jersey's law. Every claim predicated on that conduct – including CEPA, NJCRA, common law tort, "investigatory misconduct," and any theory of aiding and abetting – is independently barred as a matter of law by the litigation privilege. The Court, therefore, need not and should not permit discovery into any of these litigative acts.

### III.    PLAINTIFF'S STATUTORY CLAIMS FAIL AS A MATTER OF LAW

Plaintiff's statutory claims under the Conscientious Employee Protection Act ("CEPA"), New Jersey Civil Rights Act ("NJCRA"), and the New Jersey Law Against Discrimination ("NJLAD") must also be dismissed because there is no basis for such an action against the VRC Defendants. While unclear if the Complaint intends to assert these claims against the VRC Defendants given the factual allegations, all defendants, including the VRC Defendants, are nonetheless included within the request for relied. These claims must all be dismissed as to the VRC Defendants as CEPA, the NJCRA and the NJLAD do not provide for a private cause of action against the VRC Defendants under the facts alleged. These statutes apply only to specific categories of defendants, such as employers or state actors, and do not extend to private third parties like the VRC Defendants.

The Complaint does not allege, nor could it, that VRC Investigations or its employees had any employment relationship with the Plaintiff or acted under color of state law. Moreover, the statutory claims are untimely, legally deficient, and factually unsupported.

9

To the extent Amtrak's accompanying memorandum of law addresses these same statutory counts, the VRC Defendants respectfully join and incorporate those arguments by reference to the extent applicable, and submit this section to clarify their independent bases for dismissal in light of their distinct role as Amtrak's retained investigators. Each claim is addressed in turn below.

### A.  The CEPA Claim (Count I) Fails Because VRC Defendants Are Not Plaintiff's Employer.

Plaintiff alleges his requests for reasonable accommodations from Amtrak were consistently denied and that he was locked out of Amtrak's job portal and ignored, despite the availability of sedentary roles. (Compl. at ¶ 16). He also alleges that the retaliation began in January 2022 when Amtrak, in coordination with VRC Defendants, engaged in ongoing harassment and surveillance of Plaintiff. (Compl. at ¶ 12). He further alleges that VRC's misconduct included: surveilling him in public and private spaces;[1] lied during deposition and at trial;[2] placed tracking devices on his vehicle(s); and stalked and secretly filmed him.

To make out a prima facie claim under CEPA, Plaintiff must show that (1) he reasonably believed that Amtrak engaged in misconduct that violated a law, rule, regulation, or a clear mandate of public policy; (2) he performed a whistle-blowing activity regarding that conduct as set forth in N.J.S.A. § 34:19–3; (3) Amtrak took an adverse employment action against him; and (4) a causal connection existed between the protected activity and the adverse employment action. whistle-blowing activity and the adverse employment action. Yurick v. State, 184 N.J. 70, 875 (N.J.2005); N.J.S.A. § 34:19–3. Protected employee whistle-blowing under CEPA is limited to whistle-blowing regarding activities, policies, or practices of "employers." CEPA defines an

---

[1] Plaintiff's reference to "intrusion upon seclusion" fails for the reasons set forth below and in Amtrak's motion to dismiss, which the VRC Defendants adopt in full.

[2] To the extent Plaintiff references alleged "perjury' that is not a cognizable civil cause of action under New Jersey law, and in any event is barred by the litigation privilege as already addressed in Section II above.

"employer" as "an individual, partnership association, corporation or group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent ...." N.J.S.A. § 34:19–2(a). There is ample case law demonstrating that CEPA's protection does not extend to reports alleging the misconduct of non-employers. *See, e.g.,* Blackburn v. United Parcel Service, Inc., 3 F.Supp.2d 504, 512, *affirmed* 179 F.3d 81 (D.N.J.1998) (CEPA was enacted to protect from retaliatory action employees who "blow the whistle" on employers engaged in illegal or harmful activity); *see also,* Fleming v. Correctional Healthcare Solutions, Inc., 164 N.J. 90, (N.J.2000) (purpose of CEPA is to protect employees who report illegal and unethical workplace activities and to discourage employers from engaging in such conduct).

Here, Plaintiff does not allege a single fact that would bring the VRC Defendants within CEPA's definition of an "employer" or agent exercising employment authority. He does not allege that VRC had the power to fire, discipline, approve accommodations, set compensation, or control any condition of his employment with Amtrak. Instead, Plaintiff improperly attempts to treat the VRC Defendants' conduct itself – its alleged surveillance and "misconduct" in January 2022-September 2023 – as both the "employer misconduct" and the "adverse employment action" sufficient to satisfy the requirements set forth in the first and third elements. However, CEPA does not reach conduct by non-employers and VRC is not his employer, nor an agent with any employment authority over Plaintiff's employment status whatsoever.

The claim also fails as a matter of law on chronology alone – Plaintiff's Complaint affirmatively alleges that VRC's involvement began in January 2022, yet he never pleads any whistleblowing activity that pre-dated VRC's involvement that could have triggered retaliation. Without a proper protected disclosure, there can be no CEPA retaliation as a matter of law.

Therefore, even assuming everything Plaintiff asserts is true, he cannot satisfy any element under CEPA and Count I must be dismissed with prejudice.

### B.  Plaintiff's NJLAD/ADA Claims (Count VI) Fails.

The New Jersey Law Against Discrimination broadly prohibits unlawful discrimination in New Jersey that is premised on a person's protected characteristic, such as disabilities including mental impairments, as long as they meet the statutory definition of disability. Santiago v. City of Vineland, 107 F.Supp.2d 512 (2000)). None of the NJLAD's prohibitions apply to the conduct alleged against the VRC Defendants in the Complaint based on the language of the statute.

Preliminarily, Plaintiff's NJLAD/ADA accommodation claim is expressly directed at his employer, Amtrak, and he does not allege, nor could he, that VRC was ever his employer or owed him any statutory duty to provide reasonable accommodations. NJLAD applies only to employers or, in limited circumstances, places of public accommodation. Plaintiff's Complaint alleges neither, and thus can find no recourse in those components of the statutory scheme.

Since, VRC is not pled as his employer, nor as a school, hospital, business, or other public-facing entity offering goods or services to the general public, Count VI must be dismissed as to the VRC Defendants without further analysis.

### C.  Plaintiff's NJCRA Claim (Count II) Fails Because VRC Defendants Are Not State Actors.

The NJCRA, N.J.S.A. § 10:6-2(c), provides a private right of action for individuals who have been deprived of their substantive rights or whose rights have been interfered with by threats, intimidation, coercion, or force, but only when the deprivation of interference is committed by a person acting "under color of law" Gonzalez v. New Jersey Department of Children and Families, 545 F.Supp. 3d 178 (2021). The NJCRA, the vehicle for a state constitutional claim, is generally construed in parallel with a Federal Civil Rights Act claim under 42 U.S.C. 1983.  To prevail on

12

a § 1983 claim, a plaintiff must allege that the defendant acted under color of state law, in other words, that there was state action. Lugar v. Edmondson Oil Co., 457 U.S. 922, 929 (1982).

Since VRC is a private entity and its employees are private persons, they cannot be said to have been acting under the color of law when conducting surveillance or testifying in litigation between Plaintiff and Amtrak. Therefore, claims against the VRC Defendants under the NJCRA must also be dismissed with prejudice.

## IV.    PLAINTIFF'S COMMON LAW CLAIMS FAIL AS A MATTER OF LAW

### A.  The Invasion of Privacy Claims Fail as a Matter of Law.

Plaintiff attempts to recast lawful, litigation-related surveillance and testimony into tort claims arising from "perjury, defamation, surveillance, and other misconduct" undertaken while VRC acted as Amtrak's retained investigators in the prior FELA action. Plaintiff's allegations that VRC "followed, observed, and recorded him in various public and medical settings" are wholly conclusory and lack the particularized facts required by Twombly/Iqbal to state a plausible claim for invasion of privacy.

To state a claim for intrusion upon seclusion, a plaintiff must demonstrate: (1) an intentional intrusion; (2) into the solitude, seclusion, or private affairs of another; (3) that is highly offensive to a reasonable person. Kinsella v. Welch, 362 N.J. Super. 143, 156 (App. Div.2003). It is clear under New Jersey law that individuals have no reasonable expectation of privacy in their public movements and that mere observation or photographing of a person by an investigator while they are in public is not actionable. Villanova v. Innovative Investigations, Inc. 420 N.J. Super. 353, 363-364 (App. Div. 2011). The Appellate Division in Villanova expressly held that there was no actionable intrusion upon seclusion claim for an investigator's placement of a tracking device on an individual's car as it would only be tracking a vehicle as it traveled in public places. Id. Here,

Plaintiff fails to plead sufficient facts to establish that there was any surveillance of Plaintiff outside of public settings where he has no reasonable expectation of privacy.

Plaintiff does not identify any specific date, location, facility, vantage point, method of recording, or the content of any alleged recording, nor does he allege who conducted such recording or how it invaded a protected privacy interest. Such bare assertions are legal conclusions couched as facts and are not entitled to the presumption of truth. Ashcroft v. Iqbal and Bell Atlantic Corp. v. Twombly require factual content that would allow the Court to draw a reasonable inference of liability; allegations "above the speculative level" are necessary and are absent here.

Plaintiff fails to plead facts establishing a reasonable expectation of privacy. While classified as "private" setting, the Complaint's allegations as pled indicate that any surveillance was only while Plaintiff was in a public setting or location accessible to the public and, therefore, somewhere where Plaintiff does not have a reasonable expectation of privacy. His own pleading alleges surveillance "in various public and medical settings," but does not assert facts showing that any alleged observation occurred in a non-public area of a medical facility, from a non-public vantage point, or captured confidential or private moments or information. Without pled allegations that VRC intruded into a private place or private affairs, rather than observing from public or otherwise lawful vantage points during litigation-related investigation, Plaintiff cannot state a viable privacy-based claim. The Complaint acknowledges VRC acted as Amtrak's retained investigators in the prior FELA action and conducted surveillance within that litigation context, further underscoring that generalized observations made in public or quasi-public settings do not, standing alone, constitute an actionable intrusion.

Expanding liability to litigation support vendors, such as private investigators, poses significant risks to the integrity and efficiency of the judicial process. These vendors play a crucial

role in gathering evidence and supporting legal strategies, acting under the direction of counsel or litigants. Imposing additional liability on them for actions taken within the scope of their engagement could deter thorough and effective defense investigations, as vendors may become hesitant to perform essential tasks for fear of legal repercussions. This chilling effect would undermine the adversarial system, where deeper fact-finding is essential for justice. Moreover, holding vendors liable for following lawful instructions from attorneys or clients would blur the lines of responsibility, leading to increased litigation costs and complicating the roles within legal proceedings. Such an expansion of liability is unwarranted and would burden the judicial process without providing corresponding benefits to the pursuit of justice.

Further, as discussed above any surveillance-related claims are independently barred by New Jersey's litigation privilege. Plaintiff concedes the challenged conduct, or surveillance, occurred "during those proceedings" and was undertaken to assist Amtrak's defense. Under Hawkins and its progeny, there is absolute immunity for communications and conduct by authorized participants undertaken to achieve the objects of litigation and bearing a logical relation to the case. That immunity extends to investigators' pretrial activities in aid of a party's defense strategy. Thus, even crediting Plaintiff's allegations, the surveillance claims are privileged and must be dismissed.

**B.** **Plaintiff's Claim for Civil Conspiracy or Aiding and Abetting is Legally Deficient**

Plaintiff's pleadings do not state any viable basis to assert a claim for a civil conspiracy or aiding-and-abetting liability against the VRC Defendants as Amtrak's investigative vendor given that the statutes and tort theories he invokes either require direct employer conduct, state action, or independently actionable wrongful acts by the VRC Defendants, none of which is alleged against the VRC Defendants. Under New Jersey law, a civil conspiracy claim requires four

15

essential elements: (1) a combination of two or more persons acting in concert, (2) to commit an unlawful act or to commit a lawful act by unlawful means, (3) an agreement between the parties to inflict a wrong against or injury upon another, and (4) an overt act that results in damage. See Banco Popular North America v. Gandi, 184 N.J. 161 (2005). Here, Plaintiff fails to plead facts to establish there was an agreement to commit an unlawful act or inflict harm to Plaintiff or an overt wrongful act taken by the VRC Defendants in furtherance of any such agreement.

While unclear which claim or claims an alleged civil conspiracy claim is even based on, the claim similarly fails regardless. Plaintiff's CEPA count lies against an employer for alleged retaliatory personnel actions, and the VRC Defendants were retained for litigation support, not entities with supervisory or decision-making authority over Plaintiff's employment; CEPA, therefore, provides no derivative liability against them absent independent wrongful conduct, which is not pled. (Compl. ¶¶ 3, 12-16, 20). Plaintiff's NJCRA count fails because it requires action "under color of state law," and he pleads none as to private investigators. Repackaging litigation activity and surveillance as civil rights violations does not convert private defense efforts into state action.

Plaintiff's aiding/abetting and conspiracy count is purely derivative and cannot stand without a viable underlying tort and well-pled facts showing actual knowledge and substantial assistance. For the reasons set forth above, each of the individual claims asserted against the VRC Defendants is legally deficient. Without any underlying wrong, the civil conspiracy claim must also be dismissed. Furthermore, Plaintiff's complaint offers only conclusory assertions that defendants acted in concert during the defense of the prior FELA action, which is insufficient to plead a claim for a civil conspiracy against the VRC Defendants. (Compl. ¶¶ 25–26, 11.1, 12–15).

For the reasons set forth above, in addition to being barred by New Jersey's litigation privilege, any claim for civil conspiracy or aiding and abetting pled in the Complaint is deficient on its face and must be dismissed.

## V.   THE CLAIMS ARE TIME-BARRED UNDER THE APPLICABLE STATUTES OF LIMITATIONS

Most, if not all of Plaintiff's claims, are also time-barred by the applicable statute of limitations. Plaintiff's statutory claims and common law invasion of privacy or emotional distress claims have a two year statute of limitations under N.J.S.A. 2A:14–2. Plaintiff's allegations against the VRC Defendants concern surveillance and related investigative activities he says occurred between January 2022 and September 2023, as well as deposition testimony on July 7, 2022 and trial testimony during court proceedings from October 30, 2023 to November 6, 2023. Plaintiff filed the present action in the Superior Court of New Jersey, Essex County, on August 1, 2025.

Plaintiff's own complaint establishes that the surveillance activities primarily occurred more than two years prior to the Complaint being filed and that he was aware of the surveillance as of July 7, 2022 deposition testimony. By his own pleading, therefore, most if not all of the alleged non-testimonial investigative conduct that forms the factual basis for the claims against the VRC Defendants ended more than two years prior to suit being field. The alleged deposition testimony occurred more than three years before suit.

While Plaintiff's trial-testimony allegations arise from proceedings that concluded on November 6, 2023, these allegations do not form the factual basis for the underlying claims against the VRC Defendants, which are based upon an alleged invasion of privacy from the VRC Defendants' surveillance. As noted above, that surveillance occurred more than two years prior to the filing of the Complaint.

Since Plaintiff's counts are predicated exclusively on the surveillance that occurred more than two years prior to the filing of the Complaint and the Complaint concedes that Plaintiff was aware of same as early as July of 2022, three years before the Complaint was filed, the claims against the VRC Defendants are untimely and should be dismissed with prejudice.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Complaint fails to state any claim upon which relief can be granted. Each cause of action is legally deficient due to a lack of necessary factual allegations to support the required elements, reliance on conduct not actionable under New Jersey law, and assertions against parties to whom no legal duty was owed. Therefore, the Complaint should be dismissed in its entirety, with prejudice.

Respectfully Submitted,

**McGIVNEY, KLUGER, CLARK
& INTOCCIA, P.C.**
*Attorneys for Defendants
VRC Investigations; Edward Belenguer;
and Leroy Kelly, II*

/s/ Anthony L. Bush_____
**ANTHONY L. BUSH, ESQ.**

Dated: December 23, 2025

18