**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BELTON C. HAIG, SR., <br><br>      Plaintiff, <br><br>   v. <br><br> NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK), VRC INVESTIGATIONS, EDWARD BELENGER, LEROY KELLY, II, and JOHN BONVENTRE <br><br>      Defendants. | Civil Action No.: 2:25-cv-15438 <br><br><br> **OPINION & ORDER** |

**CECCHI, District Judge.**

This matter comes before the Court on three motions:  (1) Pro Se Plaintiff Belton C. Haig's ("Plaintiff" or "Haig") motion to remand, ECF No. 7;  (2) Defendants National Railroad Passenger Corporation ("Amtrak") and John Bonventre's ("Bonventre") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. 9;  and (3) Defendants VRC Investigations ("VRC"), Edward Belenger ("Belenger"), and Leroy Kelly II's ("Kelly", collectively the "VRC Defendants", and together with Amtrak and Bonventre "Defendants") motion for judgment on the pleadings under Rule 12(c),  ECF No. 20.  The Court decides these motions without oral argument pursuant to Federal Rule of Civil Procedure 78(b).  For the reasons set forth below, Plaintiff's motion is **DENIED** and Defendants' motions are **GRANTED**.

## I.     BACKGROUND

This case arises out of Defendants' alleged misconduct during a prior lawsuit.  ECF No. 1-1, Exhibit A, Complaint ("Compl.") ¶ 11.1.  That prior case involved a "serious vehicular accident" while Plaintiff, an Amtrak employee, was working in a "faulty company vehicle."  *Id.* ¶¶ 10–11.  Plaintiff asserts he sustained "multiple permanent physical injuries" and ultimately won at trial with judgment being entered in Plaintiff's favor on November 16, 2023.  *Id.* ¶¶ 10, 11.1; *Haig v.*

*Nat'l R.R. Passenger Corp.*, 18-cv-12370 (D.N.J.) at ECF No. 121. The instant lawsuit stems from alleged "acts of perjury, defamation, and other misconduct committed by Defendants during those [prior] proceedings [which] substantially undermined the fairness of the process and diminished the monetary award rendered by the jury." Compl. ¶ 11.1.

Haig makes allegations against Amtrak (his employer), Bonventre (Amtrak's attorney in the prior case), VRC (an entity which Amtrak hired to investigate the prior action), and VRC's investigators (Defendants Belenger and Kelly). *Id.* ¶¶ 2–6. Specifically, Plaintiff claims that "Amtrak, in coordination with VRC . . . engaged in ongoing harassment and surveillance of Plaintiff" during that case from January 2022 to September 2023. *Id.* ¶ 12. He further states that VRC, Belenger, and Kelly followed, stalked, and secretly filmed Plaintiff through "deception and intrusion." *Id.* ¶ 13. Plaintiff also alleges that "Belenger, Kelly, and Bonventre knowingly gave false testimony and committed perjury" which "damage[ed] Plaintiff's credibility" in the prior action. *Id.* ¶ 15. Finally, Plaintiff claims that he is disabled and that Amtrak denied his requests for reasonable accommodations. *Id.* ¶¶ 1, 16.

Plaintiff filed suit in the Superior Court of New Jersey Essex County, Law Division in August 2025. *See* Compl. The complaint alleges six counts: violation of the New Jersey Conscientious Employee Protection Act ("CEPA") (Count 1); violation of the New Jersey Civil Rights Act ("NJCRA") (Count 2); intrusion upon seclusion (Count 3); intentional and negligent infliction of emotional distress ("IIED" and "NIED") (Count 4); civil conspiracy and aiding and abetting (Count 5); and failure to accommodate under the New Jersey Law Against Discrimination ("NJLAD") and Americans with Disabilities Act ("ADA") (Count 6). Defendants timely removed the case to this Court on September 10, 2025. ECF No. 1. Plaintiff then filed a motion to remand the case. ECF No. 7. The VRC Defendants filed their answer, ECF No. 8, and Amtrak and

2

Bonventre filed a motion to dismiss.  ECF No. 9.  The VRC Defendants then filed a motion for judgment on the pleadings.  ECF No. 20.

## II.      LEGAL STANDARD

### A.  Motion to Remand

Federal courts maintain jurisdiction for "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  The "well-pleaded complaint rule" provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). On a motion to remand, the removing party has the burden of establishing the propriety of removal. *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990).  "A case must be remanded if, at any time before final judgment, the district court discovers that it lacks subject matter jurisdiction to hear the case." *Stephens v. Gentilello*, 853 F. Supp. 2d 462, 465 (D.N.J. 2012) (citing 28 U.S.C. § 1447(c)).

### B.  12(b)(6) and 12(c)

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  A claim is facially plausible when supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A complaint that contains "a formulaic recitation of the elements of a cause of action" supported by mere conclusory statements or offers "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (citation omitted).  In evaluating the sufficiency of a complaint, the court accepts all factual allegations as true, draws all reasonable inferences in favor of the non-moving party, and disregards legal conclusions. *Phillips*

*v. Cnty. of Allegheny*, 515 F.3d 224, 231–34 (3d Cir. 2008).  Courts liberally construe a pro se litigant's complaint.  *Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011).  Finally, "A motion for judgment on the pleadings under Rule 12(c) is analyzed under the same standards that apply to a Rule 12(b)(6) motion."  *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (quotation omitted).

### III.   <u>DISCUSSION</u>

As discussed below, the Court has subject matter jurisdiction over the case and will accordingly deny Plaintiff's motion to remand.  Additionally, Plaintiff's claims that stem from Defendants' alleged statements and communications during prior litigation will be dismissed due to litigation privilege and Plaintiff's remaining claims will be dismissed as insufficiently pled.

### A.  Plaintiff's Motion to Remand

Plaintiff's motion to remand must be denied because the Court has federal subject matter jurisdiction and, as such, Amtrak's removal was proper.  In short, Plaintiff contends that his "claims do not depend on the resolution of a federal issue" because the majority of claims are under state law.  ECF No. 7-2 at 2.  This is unavailing as Plaintiff's complaint expressly alleges that Defendants violated the Americans with Disabilities Act, a federal law.  Compl. ¶ 27.  Thus, a "federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc.*, 482 U.S. at 392; *see also* 28 U.S.C. § 1331 (Federal courts maintain jurisdiction for "all civil actions arising under the . . . laws . . . of the United States.").

Separately, the Court has federal subject matter jurisdiction under 28 U.S.C. § 1349, which confers district courts with jurisdiction over cases in which "the United States is the owner of more than one-half of [a defendant's] capital stock."  *See Hollus v. Amtrak Ne. Corridor*, 937 F. Supp. 1110, 1113 (D.N.J. 1996), *aff'd*, 118 F.3d 1575 (3d Cir. 1997) ("Because a majority of the capital

stock of Amtrak is owned by the United States, the federal courts have subject matter jurisdiction over any action involving Amtrak.").[1]   Accordingly, Plaintiff's motion to remand is denied. Nevertheless, to the extent Plaintiff seeks to remand because he did not intend to rely on federal claims, or assert claims against entities that would confer jurisdiction on this Court (e.g., Amtrak), he may amend his Complaint as consistent with this opinion and order.

### B.  Defendants' Motion to Dismiss and Motion for Judgment on the Pleadings

Before considering the Parties' arguments, the Court must first address the applicable standard when, as here, one group of defendants (Amtrak and Bonventre) filed a motion to dismiss, and another (VRC Defendants) moved for judgment on the pleadings.  A party may move for judgment on the pleadings "after the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c).  In a multi-defendant case like this one, "the pleadings are not considered closed until every defendant has answered the complaint." *Newton v. Greenwich Twp.*, No. 12-238, 2012 WL 3715947, at *1 n.1 (D.N.J. Aug. 27, 2012).[2]  Here, Amtrak and Bonventre have not answered the Complaint, whereas the VRC Defendants have.  *See* ECF No. 8.  In these circumstances, courts have "discretion to permit Rule 12(c) motions even where not every defendant has answered, so long as no prejudice to any party would result." *Newton*, 2012 WL 3715947, at *1 n.1 (collecting cases).  No party would be prejudiced here if the Court considers the motions simultaneously.  In their 12(c) motion, the VRC Defendants argue that Plaintiff has failed to state a claim upon which relief can be granted.  *See* ECF No. 20-3 ("VRC Br.") at 5–6;

---

[1] Because the Court has subject matter jurisdiction over all of Plaintiff's claims under 28 U.S.C. § 1349, it does not address the issue of whether the Court could have supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

[2] The Third Circuit has not addressed this issue but a number of district courts in this circuit have held the same. *See, e.g.*, *TD Bank, N.A. v. Cont'l Ins. Co. of New Jersey*, No. 23-1951, 2024 WL 1327971, at *4–5 (D.N.J. Mar. 28, 2024); *Cook v. TransUnion*, No. 23-1146, 2024 WL 128204, at *1–2 (E.D. Pa. Jan. 11, 2024) (collecting cases).

*see also* Fed. R. Civ. P. 12(h)(2)(B) ("[The] [f]ailure to state a claim upon which relief can be granted [defense] . . . may be raised by a motion under Rule 12(c)."). Amtrak and Bonventre advance the same argument in their 12(b)(6) motion. *See generally* ECF No. 9-3 ("Amtrak Br."). Accordingly, this Court will exercise its discretion and consider both motions under the same 12(b)(6) standard.[3] *See Wolfington*, 935 F.3d at 195 ("A motion for judgment on the pleadings under Rule 12(c) is analyzed under the same standards that apply to a Rule 12(b)(6) motion." (quotation omitted)).

### 1. Litigation Privilege

Defendants argue that Plaintiff's claims must be dismissed because they are protected by the litigation privilege. *See* Amtrak Br. at 5–7; VRC Br. at 6–9. Defendants are correct to the extent Plaintiff's claims arise out of Defendants' statements and communications made in the prior lawsuit.

New Jersey's litigation privilege is "well-established and broadly applicable." *Rickenbach v. Wells Fargo Bank, N.A.*, 635 F. Supp. 2d 389, 401 (D.N.J. 2009). The privilege provides "absolute protection" for "[s]tatements made by lawyers, judges, witnesses, and parties" as well as investigators. *DeNicholas v. Centene Corp.*, No. 17-0924, 2017 WL 7542616, at *2 (D.N.J. Oct. 20, 2017); *Hawkins v. Harris*, 661 A.2d 284, 291–92 (N.J. 1995). It "applies to communications '(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.'" *Shih v. Maselli, Mills & Fornal, P.C.*, No. 24-6300,

---

[3] To the extent the VRC Defendants' motion is a motion for judgment on the merits, the motion is denied as improper in the current posture. *See e.g.*, *TD Bank*, 2024 WL 1327971, at *5 (construing 12(c) motion as motion to dismiss and denying the motion to the extent it "requests a judgment on the merits").

2025 WL 957680, at *3 (D.N.J. Mar. 31, 2025) (quoting *Roggio v. McElroy, Deutsch, Mulvaney & Carpenter*, 415 F. App'x 432, 433 (3d Cir. 2011)).  The privilege "is not limited to statements made in a courtroom during a trial; it extends to all statements or communications in connection with the judicial proceeding." *Hawkins*, 661 A.2d at 289 (quotation omitted).  "The application of the litigation privilege is a question of law which may be determined at the motion to dismiss phase."  *Shih*, 2025 WL 957680, at *3 (quoting *Burgess v. Bennet*, No. 20-7103, 2021 WL 1050313, at *6 (D.N.J. Mar. 19, 2021)).

Here, Plaintiff alleges that "During depositions on July 7, 2022 and later during court proceedings from October 30 to November 6, 2023, Belenger, Kelly, and Bonventre knowingly gave false testimony and committed perjury, damaging Plaintiff's credibility." Compl. ¶ 15.  And Plaintiff further contends that Defendants engaged in "acts of perjury" and "defamation . . . during those proceedings." *Id.* ¶ 11.1.  The Complaint does not allege with any specificity or detail what these statements were, or what made them false.  Nevertheless, the Court finds that Plaintiff's claims arising from these statements are barred by the litigation privilege.  These statements, which were made "during depositions" and "court proceedings," Compl. ¶ 15, are clearly communications made in judicial or quasi-judicial proceedings by Amtrak's lawyer and investigators—who are "participants authorized by law." *Hawkins*, 661 A.2d at 292; *Shih*, 2025 WL 957680, at *3.  Moreover, statements made during depositions or in court are necessarily made to "achieve the objects of the litigation" and "have some connection or logical relation to the action." *Shih*, 2025 WL 957680, at *3.  So, to the extent Plaintiff's claims are predicated on Defendants' statements or communications in the prior action they are dismissed.

The Court, however, cannot dismiss all of Plaintiff's claims as barred by the litigation privilege because the privilege only extends to statements and communications, not actions. *See*

*Cowe v. All-Time Auto Body*, No. 24-9803, 2025 WL 1034257, at \*7 (D.N.J. Apr. 8, 2025) ("This privilege, however, applies to communications only, not *all* actions taken during litigation" (emphasis in original)).  Plaintiff makes several allegations that pertain to Defendants' actions in the prior case.  Namely, Plaintiff contends that Defendants followed, stalked, secretly filmed, harassed, and surveilled Plaintiff and placed tracking devices on his vehicle.  Compl. ¶¶ 12–15. Plaintiff's claims based on these factual allegations are discussed in turn below.

    2.   <u>CEPA Claim (Count 1)</u>

To state a CEPA claim, a plaintiff must allege: (1) a reasonable belief of unlawful conduct; (2) a whistleblowing activity as defined by CEPA; (3) an adverse employment action; and (4) a causal connection between the two.  *Dzwonar v. McDevitt*, 828 A.2d 893, 900 (2003).  The extent of Plaintiff's CEPA claim is that "Plaintiff disclosed unlawful conduct and was retaliated against through surveillance, denial of accommodations, and public defamation."  Compl. ¶ 20.  Even when liberally construing the Complaint, Plaintiff has failed to state a claim for several reasons.

First, "when a plaintiff brings an action pursuant to [CEPA] the trial court must identify a statute, regulation, rule, or public policy that closely relates to the complained-of conduct." *Dzwonar*, 828 A.2d at 901.  Plaintiff has not alleged the specific law, rule, or policy that Defendants purportedly violated.  Haig simply alleges that he disclosed "unlawful conduct." Compl. ¶ 20.  Second, it is unclear to the Court what "adverse employment action" Defendants took against Plaintiff.  Plaintiff states that he was "retaliated against through surveillance, denial of accommodations, and public defamation."  *Id.*  However, retaliatory actions under CEPA "must have impact 'on the employee's compensation or rank or be virtually equivalent to discharge.'" *Patti v. Ibarrondo*, No. 22-6365, 2023 WL 4927281, at \*9 (D.N.J. Aug. 1, 2023) (quoting *Fraternal Ord. of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 241 (3d Cir. 2016)).  There

are no such allegations here.  Finally, to the extent Haig asserts these claims against the VRC

Defendants and Bonventre, those claims must fail as matter of law because those Defendants are

not Haig's employer.  *Fraternal Ord. of Police, Lodge 1*, 842 F.3d at 240 ("CEPA protects

employees against retaliation by employers.").

### 3.   New Jersey Civil Rights Act (Count 2)

In Count 2, Plaintiff alleges that "Defendants, acting under color of state or contractual

authority, deprived Plaintiff of rights including privacy, equal protection, and employment rights."

Compl. ¶ 21.  The NJCRA creates a private right of action for "Any person who has been deprived

of any substantive due process or equal protection rights, privileges or immunities secured by the

Constitution or laws of the United States [or of New Jersey] *by a person acting under color of*

*law*."  N.J. Stat. Ann. § 10:6-2 (West 2004) (emphasis added).  So, to state a claim under the

NJCRA the plaintiff must identify the state actor, i.e., "the person acting under color of law, that

has caused the alleged deprivation."  *Filgueiras v. Newark Pub. Schs.*, 45 A.3d 986, 997 (N.J.

Super. Ct. App. Div. 2012).  Haig has not met that burden.

At its core, this dispute is about Defendants' conduct in a prior lawsuit between an

employee and his employer and supposed retaliation after the case closed.  Plaintiff contends that

because Amtrak "is a federally chartered corporation created by Congress to perform a public

transportation function, extensively regulated and subsidized by the federal government" it is a

state actor under the NJCRA.  ECF No. 18 at 8.  This is unavailing.  When, as here, a suit pertains

to private conduct of an employer, "state action may be found if, though only if, there is such a

close nexus between the State and the challenged action that seemingly private behavior may be

fairly treated as that of the State itself."  *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,

531 U.S. 288, 295 (2001) (quotation omitted).  The extent of Plaintiff's allegations on this point is

9

that "Defendants, acting under color of state or contractual authority, deprived Plaintiff of rights." Compl. ¶ 21. This is wholly conclusory. As such, the Court cannot reasonably infer that Amtrak, let alone Bonventre or the VRC Defendants, is a New Jersey state actor here. The NJCRA claim is dismissed.

### 4.   Intrusion Upon Seclusion (Count 3)

Plaintiff next claims that "Defendants intruded on Plaintiff's private medical care and personal life through surveillance and deception" and that this amounts to invasion of privacy through intrusion upon seclusion. Compl. ¶ 22. Haig specifically alleges that Defendants secretly filmed and surveilled him during the prior case, including at his "VA facility." *Id.* ¶¶ 13–14. And, Plaintiff asserts that Defendants placed "tracking devices" on his vehicle. *Id.* ¶ 14.

To state a claim for intrusion upon seclusion, a plaintiff must allege (1) an intentional intrusion (2) upon the seclusion of another that is (3) highly offensive to a reasonable person. *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 293 (3d Cir. 2016). Critically, a plaintiff must establish that they "possessed a reasonable expectation of privacy in [the] matters and concerns" intruded upon. *G.D. v. Kenny*, 15 A.3d 300, 320 (N.J. 2011). Intrusion upon seclusion claims must clear a "high threshold." *Stengart v. Loving Care Agency, Inc.*, 990 A.2d 650, 660 (N.J. 2010).

Plaintiff has failed to state a claim for intrusion upon seclusion into his "private medical care." Haig claims that he "was filmed at his VA facility" which was a "private medical and rehabilitation setting." Compl. ¶¶ 13–14. He elaborated in his opposition brief, stating that Defendants "followed and recorded him in public spaces but also entered private areas, including a VA medical facility and other locations where Plaintiff had a reasonable expectation of privacy, without consent." ECF No. 18 at 10. Filming in a medical setting without a patient's permission

can amount to an intrusion upon seclusion. *See, e.g.*, *Castro v. NYT Television*, 895 A.2d 1173, 1177–78 (N.J. Super. Ct. App. Div. 2006) (trier of fact could find that filming in a hospital amounted to intrusion upon seclusion). Here, however, Plaintiff has not provided sufficient factual allegations showing that Defendants filmed in a place where he had a reasonable expectation of privacy. Although he claims as such in his brief, the Complaint does not elaborate on whether, for example, Defendants filmed Haig while being treated or undergoing tests. In other words, Plaintiff has offered only conclusory allegations that he was filmed while in a private space. Without more, Plaintiff has failed to state a claim.

Similarly, Plaintiff insufficiently pled how placing "tracking devices" on his vehicles amounts to intrusion upon seclusion. The Complaint lacks detail as to where his vehicles were tracked, when they were tracked, and for how long. That is, Haig has not alleged whether Defendants ever tracked him to a place where he had a reasonable expectation of privacy. Without that information, the Court cannot plausibly infer that Defendants intruded upon Plaintiff's privacy. *See, e.g.*, *Villanova v. Innovative Investigations, Inc.*, 21 A.3d 650, 651–52 (N.J. Super. Ct. App. Div. 2011) (holding that "the placement of a GPS device in plaintiff's vehicle without his knowledge, but in the absence of evidence that he drove the vehicle into a private or secluded location that was out of public view and in which he had a legitimate expectation of privacy, does not constitute the tort of invasion of privacy."). The claim is dismissed.

### 5.   Intentional and Negligent Infliction of Emotional Distress (Count 4)

Plaintiff's fourth count states that "Defendants engaged in outrageous and extreme conduct intended to harm Plaintiff emotionally" and that "Plaintiff suffered severe distress, requiring additional medical care and medication." Compl. ¶¶ 23–24. Plaintiff further claims that Defendants' conduct worsened his "PTSD, anxiety, and depression." *Id.* ¶ 17.

11

To state an IIED claim the plaintiff must "establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Griffin v. Tops Appliance City, Inc.*, 766 A.2d 292, 296 (N.J. Super. Ct. App. Div. 2001) (quoting *Buckley v. Trenton Sav. Fund Soc'y*, 544 A.2d 857, 863 (N.J. 1988)). "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citing *Buckley*, 544 A.2d at 863). And, "the emotional distress suffered by the plaintiff must be so severe that no reasonable man could be expected to endure it." *Id.* (citing *Buckley*, 544 A.2d at 863). Plaintiff's allegations of surveillance, tracking, retaliation, stalking, perjury, denying workplace accommodations, and defamation simply do not meet this standard. Moreover, Haig has not alleged that he suffered distress so severe that no reasonable person should endure it. The IIED claim is dismissed.

As for Haig's NIED claim, in New Jersey a plaintiff may recover for negligent infliction of emotional distress under two circumstances. *Heard v. City of Plainfield*, No. 24-10293, 2025 WL 3017902, at *23 (D.N.J. Oct. 28, 2025). First, a claim may proceed where "negligence causes fright from a reasonable fear of immediate personal injury." *Falzone v. Busch*, 214 A.2d 12, 17 (N.J. 1965). Second, a claim may proceed where one witnesses the death of someone to whom they have an intimate or familial relationship, and the death was caused by a defendant's negligence. *Portee v. Jaffee*, 417 A.2d 521, 528 (N.J. 1980). Neither circumstance is alleged here. Accordingly, the NIED claim is dismissed.

### 6. Aiding and Abetting and Civil Conspiracy (Count 5)

Plaintiff next claims that "Defendants knowingly acted in concert and aided one another to retaliate against Plaintiff and cover up Amtrak's discriminatory acts." And Plaintiff further asserts that "[e]ach Defendant had knowledge of the wrongful acts and materially contributed to their

12

execution." Compl. ¶¶ 25–26. However, it "is well-settled law that when a plaintiff brings a civil conspiracy or aiding and abetting claim . . . he or she must allege a viable underlying tort." *Avataa USA, LLC v. Yaminsky*, No. 24-6314, 2025 WL 892716, at *8 (D.N.J. Mar. 24, 2025) (collecting cases). Because, as discussed above, Plaintiff has not adequately alleged an underlying tort, the claim is dismissed.

7.   Failure to Accommodate under the ADA and NJLAD (Count 6)[4]

Plaintiff's final claim is that Amtrak denied him reasonable workplace accommodations due to his disability, despite repeated requests and after providing medical documentation. Compl. ¶ 27. Haig further notes that "[h]e was locked out of Amtrak's job portal and ignored, despite the availability of sedentary roles." *Id.* ¶ 16. In opposition, Amtrak contends that Plaintiff did not exhaust administrative remedies under the ADA before filing this suit and, even if he had, he has failed to state a claim under both the ADA and NJLAD. Amtrak Br. at 23–25. Amtrak is correct.

Before filing an ADA lawsuit, a Plaintiff must exhaust administrative remedies. *Simko v. United States Steel Corp*, 992 F.3d 198, 204 (3d Cir. 2021). "To exhaust, a plaintiff must file a charge of discrimination with the EEOC and receive a right-to-sue letter." *Litman v. Sch. Dist. of Philadelphia*, No. 24-278, 2024 WL 3361596, at *4 (E.D. Pa. July 10, 2024) (citing *Simko*, 992 F.3d at 206). Haig's Complaint includes no factual allegations as to whether he exhausted administrative remedies. As such his ADA claim must be dismissed. *See, e.g.*, *Hickman v.*

---

[4] To the extent these claims are asserted against Bonventre and the VRC Defendants, they are dismissed. Plaintiff provides no allegations suggesting that Bonventre or the VRC defendants are his employer. Additionally, if Plaintiff intended to assert that Bonventre, Kelly, and Belenger aided and abetted violations of the NJLAD in Count 5, that too must be dismissed. Although an individual who is not a plaintiff's employer can be liable if they "aid, abet, incite, compel or coerce any of the acts forbidden" by the NJLAD, there are insufficient facts pled here. *O'Toole v. Tofutti Brands, Inc.*, 203 F. Supp. 3d 458, 467 (D.N.J. 2016) (citation omitted). Mere allegations that Bonventre, Kelly, and Belenger "knowingly acted in concert and aided one another to retaliate against Plaintiff," without more, will not suffice. Compl. ¶ 25.

*Amazon Fullfilment*, 662 F. App'x 176, 178–79 (3d Cir. 2016) (affirming district court's dismissal for failure to exhaust when plaintiff "never alleged that he exhausted administrative remedies with the EEOC."); *Akopian v. Inserra Supermarkets, Inc.*, No. 23-00519, 2024 WL 4894620, at *2 (D.N.J. Nov. 26, 2024).[5]

Even if Plaintiff had exhausted administrative remedies, he nevertheless fails to state a claim under the ADA and NJLAD. To state a claim for failure to accommodate under the ADA and NJLAD the plaintiff must show "(1) he was disabled, and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017); *see also Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 n.12 (3d Cir. 2006) ("The requirements for failure to accommodate claims under New Jersey's LAD have been interpreted in accordance with the Americans with Disabilities Act.").

As to the first element, Plaintiff states that he "is a 100% disabled veteran," that he has a "mental disability stemming from military service," and that he required "sedentary roles." Compl. ¶¶ 1, 9, 16. A "disability" under the ADA is "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Akopian*, 2024 WL 4894620, at *3 (quoting 42 U.S.C. § 12102(1)). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting,

---

[5] Plaintiff's opposition brief included a notice of a right to sue letter from the EEOC dated May 2, 2024, which gave Plaintiff 90 days to file suit. ECF No. 18-2 Exhibit B. This letter, however, is not properly before the Court as "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). In any event, the Court notes that Plaintiff filed suit in August 2025, well after the 90 days elapsed.

bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Here, as to the first two prongs, although Plaintiff may have been diagnosed with a mental health disorder (*see* Compl. ¶ 1, 9), he does not sufficiently allege that this illness "substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A); *see also Vandervoort v. N. Allegheny Sch. Dist.*, No. 23-433, 2024 WL 4436858, at *11 (W.D. Pa. Oct. 7, 2024) (explaining that "a person needs more than a diagnosed impairment in order to be considered 'disabled' under the ADA"). The Complaint merely alleges that Plaintiff had a disability and that Amtrak was "fully aware" "at the time of hire." Compl. ¶ 9. Additionally, even under the third prong of the ADA which requires an individual to be "regarded" as having a disability, Plaintiff's allegations are insufficient to pass muster. *Amoroso v. Bucks Cnty. Court of Common Pleas*, No. 13-0689, 2014 WL 1284791, at *8 (E.D. Pa. Mar. 28, 2014) ("Simply alleging that an employer knew about a disability is not sufficient to demonstrate that the employer regarded the employee as disabled.").

As to the remaining elements of his failure to accommodate claim, Plaintiff does not provide any factual support beyond conclusory statements. The second element, requires a plaintiff show they "requested an accommodation or assistance." *Capps*, 847 F.3d at 157. Plaintiff alleges his "requests for reasonable accommodations from Amtrak were consistently denied," that he made reports to HR, and that he provided "medical documentation." Compl. ¶¶ 16, 18, 27. Haig does not explain what accommodations he requested, when he made those requests, or what documentation he provided.

The third and fourth elements require a showing that the "employer did not make a good faith effort to assist" and that Plaintiff "could have been reasonably accommodated." *Capps*, 847 F.3d at 157. Here too, Plaintiff has provided no facts or context beyond stating that his requests

15

were denied and "He was locked out of Amtrak's job portal and ignored, despite the availability of sedentary roles." Compl. ¶ 16.  Plaintiff does not allege what other jobs were available or how Amtrak refused to accommodate him.  In sum, Plaintiff's ADA and NJLAD claims for failure to accommodate his disability must be dismissed because it is not clear to the Court whether Plaintiff exhausted administrative remedies and what specific actions he and Amtrak took that amount to a failure to accommodate claim.[6]

### IV.   <u>CONCLUSION</u>

For the reasons set forth above, the case will not be remanded, and Plaintiff's Complaint is dismissed without prejudice.

Accordingly, for the reasons stated above, **IT IS** on this 22nd day of May, 2026;

**ORDERED** the Plaintiff's motion to remand (ECF No. 7) is denied; and it is further

**ORDERED** that the Court grants Defendant Amtrak and Defendant Bonventre's motion to dismiss (ECF No. 9) and grants Defendant VRC Investigations, Defendant Kelly, and Defendant Bellenger's motion for judgment on the pleadings (ECF No. 20) and dismisses Plaintiff's Complaint (ECF No. 1) without prejudice; and it is further

**ORDERED** that Plaintiff shall have thirty (30) days from entry of this Opinion and Order to submit an amended complaint that addresses the deficiencies identified in this Opinion.  Insofar as Plaintiff submits a further amended complaint, he shall also provide a form of the amended complaint that indicates in what respect it differs from the current complaint, by bracketing or

---

[6] Plaintiff attaches several documents to his opposition brief that pertain to his allegations.  For example, he provides a letter from a treating physician, ECF No. 18-2 Exhibit C, a decision from the Social Security Administration finding him disabled, *id.* Exhibit H, and email correspondence and other documents showing requests to Amtrak for accommodations.  *Id.* Exhibits I, J.  As discussed above, however, the Complaint cannot be amended through briefing. *See supra* Note 5; *Com. of Pa. ex rel. Zimmerman*, 836 F.2d at 181.  Given that the Court permits Plaintiff to file an amended complaint, he may include relevant factual allegations therein.

striking through materials to be deleted and underlining materials to be added. *See* L. Civ. R. 15(a)(2); and it is further

ORDERED that should Plaintiff submit an amended complaint, he may not make factual allegations barred by the litigation privilege as described herein.

SO ORDERED.

*s/ Claire C. Cecchi*

CLAIRE C. CECCHI, U.S.D.J.